## GEORGE W. CARROLL *vs.* THE BOARD OF POLICE OF TISHAMINGO COUNTY.

It is a general rule, that upon an application for a peremptory writ of *mandamus*, the facts embraced in the return to the writ, which issued in the alternative, must be taken as true; but this, however, must be understood to mean such facts only as are relevant to the subject of inquiry before the court.

Where the board of police are authorized by the authority invested in them to audit and allow upon due proof any and all claims against the county, and they issue a warrant upon a claim against the county, which falls exclusively under their jurisdiction to adjudicate upon: *Held*, that their judgment, like that of any other court having exclusive jurisdiction over the subject-matter and the person to be affected, must be treated as final and conclusive, until reversed or vacated in some mode known to the law.

No fact which could have influenced the action of the board of police, or been considered by them at the time they pronounced the judgment, can now be considered by this court.

No suit can be maintained against a county, and the various provisions of the statute prescribing the time within which actions shall be prosecuted upon contracts, only apply to those cases where a suit can be maintained. *Held*, that the provisions of the statute in regard to reviving judgments by *scire facias*, or action of debt, cannot be held to apply to a judgment of the board of police, but only to such judgments as can be enforced by execution, &c.

There is nothing in the language of the act of 25th of February, 1842, p. 213, which requires " all persons having a claim or claims against any county treasurer," &c., to present the same within one year from the date of said claim, to the county treasurer," &c., showing that the legislature designed that the act should have a retrospective action; and the rule is settled by this court, that unless such be the clear intention of the legislature, manifested by the language employed, the law will have only a prospective

action. *Held,* that the warrants in controversy having been issued more than a year before that act took effect, it cannot apply to them.

There is no other remedy than by *mandamus* to compel the board of police to discharge their duty by levying a tax upon the people of the county to pay the warrants; which process should be granted on all occasions where the law has established no specific remedy, and where in justice and good faith there ought to be one.

On appeal from the circuit court of Tishamingo county; Hon. Hugh R. Miller, judge.

George W. Carroll petitioned for a *mandamus* against the board of police of Tishamingo county, to compel said board to levy a tax upon the people of said county, to pay certain warrants issued by the clerk of police court of said county on the 11th of August, 1840, and one of which warrants bears interest upon its face from date.

On the 16th of October, 1838, Jefferson O. Tarkington executed his bond with security to John C. Carter, president of the board of police of Tishamingo county, by which the said Tarkington bound himself to build and complete a court house for said county, in all respects according to the plan and specifications thereto annexed, and perform the same in a good, workmanlike order, out of firstrate materials; to have the whole completed by the 16th of October, 1840, for which the said Carter, president of said board of police, &c., agreed to pay said Tarkington the sum of $6,500, as follows: $1,166.66⅔, payable on the 15th of June, 1839; $2,166.66⅔ payable on the 15th of February, 1840, and one other for $2,166.66⅔, payable on the 15th of October, 1840, the day on which the building was to be completed; and if the building was not completed according to contract, the said T. and sureties bound themselves to forfeit to the said Carter, president, &c., and successors in office, the sum of $13,000. And on the second Monday in August, 1840, the board of police of Tishamingo county made an order in the following words: "It is ordered by the board, that Derosa Carroll, who purchased the claim of the undertaker of the building of the jail and court house in part, be allowed the following sums, namely: the sum of $1,231.50, with interest from the 15th day of June, 1839;

the sum of $2,166.66⅔, with interest from the 15th day of February, 1840; and the sum of $2,166.66⅔ to be payable on the 15th of October, 1840, and that the county treasurer pay the same, &c., and the clerk issue warrants for the said amounts," &c.   On the 11th of August, 1840, warrants were issued for the amounts by the clerk to D. Carroll, but G. W. Carroll now claims to be the owner of the two warrants for $2,166.66⅔, for the payment of which he prayed a *mandamus* against the board of police, &c., by petition filed on the 26th day of February, 1853, to which the board answered, denying that the work had been done according to contract, and also relying upon the statute of limitations, &c.   At the September term of the court, 1853, G. W. Carroll moved the court for a peremptory *mandamus* which was refused, and Carroll prayed this appeal.

*Reynolds* and *Kinyon*, for appellant.

Can it be argued that the claims shall be barred by the act of 1842, p. 213, because an impossibility was not complied with? To hold that this statute barred these warrants, is to hold that the legislature by the same wiped out and discharged all warrants upon county treasuries issued and dated more than one year before the 1st April, 1852.   We think such a proposition will hardly be tolerated.   Our purpose is not to comment upon the policy or propriety of the act in question, but only to show what is apparent, that it does not affect this case in any manner.   To this point, see *West Feliciana Railroad Co.* v. *Stocket*, 13 S. & M. 395.   This is fatal to the defence on this point.   To hold that the act under consideration bars the remedy by *mandamus* on the warrants, although it may not be correctly considered an *ex post facto* law, yet it would in effect be to hold that the legislature might pass a law impairing the obligation of contracts.   But we shall not press this view, as it is thought to be wholly unnecessary.

Next we will consider the various statutes of limitations set up, and that may by possibility, as we conceive, bear upon the subject.   It is set up that the judgment is barred by the statute of 1844.

Carroll *v.* Board of Police of Tishamingo Co.

The error of applying the statute of limitations to the judgment under consideration consists, we think, in not properly considering and appreciating what the judgment really is. It is merely a decision by the board of police either for or against allowing a claim, or a part or parts of it. In the language of the statute, they (the court) " shall in term time audit and allow on due proof, all accounts and demands legally chargeable on their respective counties." Their allowance or disallowance constitute the judgment. The judgment has no other effect than that of authorizing the clerk to issue his warrant on the county treasury. It stands as a record of the decision made in the premises. It has no lien, nor can any action be founded upon it.

It is set up that the issuance of the warrants discharged the judgment. This we conceive to be erroneous. The judgment stands a decision of record, as well after the issuance of the warrants as before, and the only thing which is discharged by the issuance of the warrants, is the duty of the clerk.

The act of 1844 bars the revival of the judgment, the issuance of execution upon it, and the right to institute an action upon it, and therefore can only apply to such judgments as are .susceptible of being revived, upon which execution may issue, and that an action may be founded upon. Not one of these incidents attaches to the judgment of the board of police. We do not conceive, however, that it is at all material to consider as to whether the limitations apply to it or not, nor whether it be considered technically a judgment. It is sufficient that it is a decision of record by the proper tribunal, in a subject-matter over which they had full jurisdiction.

The limitations of the act of 1844 are set up also to the warrants. The same reasoning applied to the judgments, namely, that they have no incidents or properties upon which the limitations could take effect, or to which they can. apply, applies to the warrants. No suits can be brought upon them, and no remedy exists as to them except that by *mandamus*. It is the duty of the police court to provide the means. in the treasury to discharge them, and of the treasurer to discharge them by actual payment.

4 *

The whole scope of the remedy by the *mandamus* in this proceeding, is to enforce the discharge of a duty pertaining to the board of police *ex officio,* and therefore proper for the proceedings taken.

We are unable to find any statutes of limitation applicable to this case.

It is the duty of the board of police to provide the means in the treasury by taxation, if necessary, to pay all claims legally chargeable on the county.

It is the duty of the board, as before shown, to audit and allow in term time all such claims.

It is determined by the case of *Carby,* 3 S. & M., that their decision is final until reversed in a proper manner; and we add, or is impeached upon some ground by which judgments of other courts may be impeached.

The duty of auditing and allowing the claim upon which the warrants in this case issued has been discharged, and the duty of issuing the warrants by the clerk has also been discharged.

The duty of providing means in the treasury to pay off the claims remains to be performed, and the real question is whether the board of police shall be exonerated from discharging that duty.

The board of police, although its members are elected biennially, is one continued body in the eye of the constitution and laws, as the circuit court is one and the same court although a different judge presides, and the decision of it at one term is as much the decision of the body for all time to come, (unless reversed in a proper manner,) as the decision of any other court.

Angell on Limitations, § 1, ch. 1, reads, " By the term ' Limitation ' as here used, is meant the time which is prescribed by the authority of the law (*ab auctoritate legis*) during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment; or, the time at the end of which no action at law, or in equity, can be maintained."

Has the law prescribed a time at the end of which the proceedings instituted in this case to compel the board of police to discharge its duty by providing the means in the treasury to pay off the warrants in controversy, cannot be " maintained ? "

As before observed, we are unable to find that law, if any such there be.

We cannot, on the most careful examination of the act of 1844, see that it has any application to this controversy. As before intimated, we neither seek a *scire facias* to recover a judgment, nor to have an execution ; but simply to compel the board of police to perform a duty growing out of their very constitution. That to provide the means in the treasury is a duty, is fully decided in the case of *Grant,* 9 S. & M. 77.

Will it be attempted to be held that in analogy the law, the. limitations, shall be held to bar this proceeding ? If so it becomes pertinent to ascertain what analogy there is in the case.

The relator holds his warrants upon the treasury, and the board of police insists that because he has not heretofore endeavored to enforce the performance of their duty to provide means in the treasury to pay off his warrants, that now he is barred from compelling them to do so.

It has been held by this court that the board of police is a court for certain purposes, and intimated that it may be regarded as a corporation for certain others. So far as its duty is concerned in levying a tax to provide means to pay off the warrants in this case, it may, we think, be properly regarded as a court. In this case the relator asks that they may be compelled to levy a tax. The statute fixes it as their duty. Hutch. Code, p. 708, art. 3, § 24, provides that " the county courts shall &c., levy a tax sufficient to discharge the demands on their respective counties," &c. Page 713, art. 11, § 1, provides that the boards of police may levy a special tax for county building purposes, although it exceeds fifty per cent. of the State tax.

If the statute of limitations is to be applied, when did it commence running ? Did the limitations commence at the time there was insufficient money in the treasury, or when a demand for the levy was made and the refusal by the board took place ?

The anomaly of this case presents many difficulties to the application of the limitations of actions.

This court has held that the statute of limitations cannot be set up against the State. *Parmilce* v. *McNutt,* 1 S. & M. 179.

*Quære*, can the State set it up against a creditor or claim?
*Quære*, can a county?

We shall close our observations upon this part of the subject
by assuming that the board of police, being created by the con-
stitution, is a part of the State government, and in contracting
for county buildings, &c., and in levying taxes, exercises a por-
tion of the functions of government, and that the claims of the
relator are against that branch of the State government known
as the county police, and inasmuch as no limitations could be
set up against the levying a tax by the board of police, neither
can the board set up any limitations to exonerate them from
making the levy asked.

The last reason set up in the return is no excuse, as a simple
reference to Hutch. Code, p. 713, art. 11, § 1, shows.

As the point of interest on the warrants was raised in the
argument below, we refer to *Swan* v. *Turner*, 23 Miss. Rep. 565.

*J. F. Cushman*, for appellee.

This was a *mandamus* sued out by appellant against the
board of police of Tishamingo county to compel them to levy a
tax upon the people of that county to pay certain warrants is-
sued by order of the board of police in 1840 to Derosa Carroll.

1. The circuit court properly refused to grant the *mandamus*.
A party before he can obtain a *mandamus* must establish a
specified legal right, and the want of a specified legal remedy.
The two warrants upon which the controversy arose, are noth-
ing more than promissory notes under seal; and no good reason
can be given, or authority be shown, why the appellant cannot
sue on them in the ordinary way. If the party could sue on
the warrants, it was a sufficient reason with the court for refus-
ing the *mandamus*. Such a proceeding shall be granted only
when the party has no other remedy, and the remedy must be
certain. *Board of Police* v. *Grant*, 9 S. & M. 90; 1 Serg. &
Rawle, 474; 2 Cow. 444; 1 Wend. 325; 10 Ibid. 363; 2 Ohio,
301; 7 Term Rep. 396; 5 Bac. Abr. (Bov. Ed.) 268, and au-
thorities cited.

2. If I should not be correct in the first position I have as-
sumed, I contend that the warrants are barred by the statute,

which declares "that hereafter it shall be the duty of all persons having a claim or claims against the county treasury of this State to present such claim or claims within one year from the date of such claim or claims to the county treasurer of the county wherein such claim or claims shall have originated; and it shall be the duty of such county treasurer to keep a well-bound book, in which he shall make an entry describing the claim and the date of such presentation, and also indorse his name across the back of said claim with the day and date of such indorsement," &c.; and the statute further provides, "that all claims not presented to said treasurer as aforesaid, are hereby declared to be for ever barred." Acts of Leg. 1842, p. 213, § 1, 2.

The warrants, as the proceedings show, were not presented to the county treasurer within one year from the time that act took effect, which was the 1st of April, 1842, nor were they ever presented to the county treasurer as required by that act; nor is there any such indorsement on them as by the statute requires before they can be paid by the county, and consequently they are barred by that act. It is said by counsel for appellant that the act of 1842 does not apply to the warrants in controversy, because they had been issued more than one year before the passage of that act. The act of 1842 was, I contend, not only intended as an enrolment law, but a statute of limitations also, and its provisions ought to be strictly complied with. It is true the act uses the words, "hereafter it shall be the duty of all persons having a claim," &c.; but the word "having," being a present participle, refers to the present time, and taken in connection with the word "hereafter," refers to the past, present, and future time, and was evidently intended to include all claims against counties in the State, whether issued before, at the time of, or after the passage of the act. The reason for passing the act applies as well to claims against the counties, issued and outstanding before the passage of the act, as after its passage. On this point as to the intention of the legislature in passing the act, to the rule to be adopted in the exposition of statutes, which is that the leading clue to the construction to be made, is the intention of the legislature, and as a primary rule it is to be collected from the words, but when

they are not explicit, it is to be gathered from the necessity and occasion for the passage of the act.   Dwar. Const. Stat. (7 Law Lib.) 42.   Again, the same author says that no statute is to be construed so as to be inconsistent and against reason; for the words may not at all times give the true meaning, and the courts will not construe acts so as to admit of absurd consequences.   Ib. 80.

3d.   Another objection to the issuance and payment of the warrants is, that they bear interest on their face, as the order of the court directing their issuance provides, which was a clear violation of duty of the board of police, that ordered this to be done; as no authority is given under the statute to authorize a board of police to issue funded warrants.   Hutch. Code, p. 709, § 44.

4th.   Whether the warrants issued are regarded as promissory notes under seal, or as judgments, they are barred by the statute of limitations, as no attempt was ever made to enforce their collection for more than twelve years from the time they were issued by the clerk of the probate court of Tishamingo county. If these notes are in the nature of judgments they cannot at this late day be enforced.   Hutch. Co. p. 730, 731, § 8, &c.

5th.   The board of police transcended the power conferred on them by the statute in issuing the warrants before the amount due the holder from the county was due to him.   The last payment was not due until October, 1840, and both these warrants were issued in August, 1840, consequently the people of Tishamingo county had no chance to contest the fact whether the court house was built as the bond of the undertaker provided it should be, in a workmanlike manner and of firstrate materials.   For if they are judgments, as is contended, then judgment was rendered in the case before the debt was due, and the issuance of the warrants before the money due the contractor ought to have been paid, and the work completed according to bond, was a fraud upon the people of Tishamingo county by the board of police, and the act is void.   A judgment is the making of the law, and the court must wait for the facts that shall give occasion for a lawsuit, on which facts, when the suit arises, a court gives judgment.   Ram. Leg. Judg. 1.   But in this case judgment was rendered before the

facts arose, and there was no opportunity to contest the fact whether the work was done according to contract or not.

6th. There is nothing which shows that the undertaker under whom the appellant claims title to the notes, ever took up his bond given for the faithful performance of the work, or that the president of the board of police, to whom it was given, ever consented to deliver it up to him. But the fair presumption is, that the bond of the undertaker was never given up to him, because he had not performed faithfully his contract. The appellant cannot claim to have the warrants paid until the undertaker, who was to receive the warrants for his work, has performed the labor in a workmanlike manner out of firstrate materials. The best way of showing that fact is, to show that his bond to do the work has been delivered to him.

7th. A peremptory demand for a *mandamus* admits the facts set forth in the answer of appellee, which clearly show that the appellant has no right to demand payment from the county for the work which he did not finish in " a workmanlike manner out of firstrate materials."

*B. C. Rives*, on the same side.

Mr. Justice FISHER delivered the opinion of the court.

This was an application to the circuit court of Tishamingo county for a writ of *mandamus* against the board of police of said county to compel them to levy and to cause to be collected a tax for the purpose of paying certain warrants held by the relator on the treasury of that county.

The court upon the coming in of the return to the writ which issued in the first instance in the alternative, refused to grant a peremptory writ, and thereupon dismissed the application. From which judgment the present writ of error has been prosecuted.

It is a general rule that upon an application for a peremptory writ of *mandamus*, the facts embraced in the return to the writ, which issued in the alternative, must be taken as true. This, however, must be understood to mean such facts as are relevant to the subject of inquiry before the court; for as to

irrelevant facts, it is wholly immaterial whether they are true or false, they cannot enter into the investigation. Our first inquiry must therefore be to determine, what facts are pertinent to the subject submitted for the decision of the court. About the 11th of August, 1840, the board of police of said county, made an order directing the warrants now sought to be collected, to issue in favor of one Derosa Carroll, upon the treasury of said county. It is said, among other things, that this order appears upon its face to be void; and, therefore, the warrants issued in obedience to such order are not binding upon the county. It appears that one Tarkington had undertaken to build the court house and jail of said county, and that he transferred his contract in part to Carroll. The board of police recognizing the validity of this transfer, allowed the claim, and directed the warrants to issue in favor of Carroll instead of Tarkington. We are unable to discover any irregularity in this proceeding. The statute conferred on the board of police ample power to make the contract for the erection of the court house and jail of the county, as also to levy a tax for the purpose of discharging the contract. In addition to these provisions, the board were authorized to audit and allow upon due proof, any and all claims against the county. The warrants, in this instance, grew out of the contract for building the court house and jail of the county; the claim was therefore one against the county, and as such falling exclusively under the jurisdiction of the board of police. Their judgment, like that of any other court having exclusive jurisdiction over the subject-matter, and the person to be affected, must be treated as final and conclusive until reversed or vacated in some mode known to the law. The judgment of the board in this instance was final. It was not subject to any contingencies or conditions whatever. It may have been impolitic or unwise, but this is not the question to be decided. It was the judgment of the only court which could in the first instance take jurisdiction of the subject-matter; and it is the policy of the law, no less than the interest of society, that there should be a point in all judicial proceedings where they should become final and conclusive between the parties directly interested. This point is

well ascertained by the law. It is the final judgment in the cause — the result of the proceedings instituted for the redress of a particular injury — or for the ascertainment and recovery of a certain sum of money. If one such judgment or sentence is not to be treated as conclusive, how many must a court pronounce before its action shall be respected? The law has settled this question by declaring, that all such judgments shall be treated as final until reversed or impeached for fraud, or otherwise vacated according to law.

This being the effect of the judgment of the board of police in this case, allowing the creditor's claim, neither party can go behind it, and hence it is immaterial whether the facts contained in the return be true or false, as they cannot avail the board of police any thing, so long as their own judgment against themselves stands in full force. No fact which could have influenced the action of the board, or been considered by them at the time they pronounced the judgment, can be now considered. The board must have done one of two things. They were either governed by the terms of their contract in ordering payment to be made, or if they deviated from the strict terms of the contract, they still had jurisdiction over the subject-matter, and must have concluded that the claim was a just one, and ought, therefore, to be paid. Having authority to make the contract in the first instance, they had authority to modify or vary its terms, either as to the work, the payment of the money, or as to the person to receive the payment.

This disposes of all the various points made by the return, except the statute of limitations, and the one whether a *mandamus* is the proper remedy in a case like the present.

In regard to the statute of limitations, it may be stated in the first place, that no suit can be maintained against a county; and the various provisions of the statute prescribing the time within which actions shall be prosecuted upon certain contracts, only apply to those cases where a suit can be maintained. But if the statute should be held to apply at all to claims against the county, it must be insisted on at the proper time, pending the controversy before the board of police,

which was not done in this case, or if done, it was not re-garded, and we think very properly so, by the board.

It is, however, said that the statute which bars judgments within a certain time, must operate to bar the judgment of the board of police in this case. It is true the statute prescribes a time within which a party must sue out his execution on a judgment, or revive it by *scire facias*, or action of debt; other-wise his remedy will be lost. No execution can issue to enforce a judgment of the board of police against the county. Such judgment is enforced by a warrant on the treasury; and the board undertake by directing the warrant to issue, to cause the money to be placed in the treasury for the payment of the sum specified in the warrant. It has already been said that no suit could be maintained against the county; and hence the pro-visions of the statute in regard to reviving judgments by *scire facias*, or action of debt, cannot be held to apply to a judgment of the board of police, but only to such judgments as could be enforced by execution, or revived by the above-named rem-edies.

Again, it is insisted that the warrants are barred by the pro-visions of the act approved the 25th of February, 1842, declar-ing that "all persons having a claim or claims against any county treasury of this State, shall present such claim or claims within one year from the date of said claim, to the county treas-urer of the county wherein such claim or claims shall have originated." The act further provides, that the treasurer shall keep a book, "and shall make therein an entry describing the claim, and the date of the presentation, and shall also indorse his name across the back of the claim, with the day and date of such indorsement." Laws of 1842, p. 213.

There is nothing in the language of this law, showing that the legislature designed it to have a retrospective action; and the rule, as definitively settled by this court, is, that unless such be the clear intention of the legislature, manifested by the lan-guage employed, the law will have only a prospective action, and will constitute a rule of action only as to matters arising after the enactment of the law. The warrants now in contro-versy, were issued on the 11th day of August, 1840; and the

law, under the operation of which they are sought to be brought, was not enacted until the 25th of February, 1842, more than eighteen months after their date. But it is argued that the warrants should have been presented to the county treasurer within sixty days after the approval of the law. It is a sufficient answer to this to state, that such is not the language of the statute. It requires, in general terms, the presentment to be made within one year after the date of the claim, otherwise the claim will be barred. The only question which can arise, is, Whether this language has reference to claims existing before the passage of the law, or only embraces claims originating afterwards? We are clearly of opinion, for the reasons stated, that the latter were only intended to be embraced by the legislature. To hold that the former were intended to come under the operation of the law, would be equivalent to saying, that the party had lost his rights in consequence of laches, when the law exacted of him no greater diligence than he had actually used.

This brings us to the consideration of the last point in the cause, whether the party is entitled to the remedy which he has invoked by peremptory *mandamus.* It has been argued on behalf of the defendants, that the relator had a full and complete remedy, either by bill in equity or by an action at law. This argument has already been incidentally met in considering other points made in the defence. The manner in which, and the tribunal before which, a claim against a county must be enforced, are clearly defined by the statute. This tribunal has long since acted in regard to the claims now in controversy. They have been as definitely ascertained, and judgment directing their payment as clearly pronounced, as it is possible for any other court, even if it had jurisdiction, to pronounce a judgment in the premises. There is no unsettled or open question as to the amount to be paid, but only whether the sum already adjudged shall be paid as directed by the order of the board of police. The question is, By what means shall this judgment be enforced? It has already been said that the board of police by their judgment tacitly agreed to provide the means in the mode pointed out by law, with which to pay the

warrants, directed to be issued on the treasury of the county. Indeed, such was the nature and operation of the judgment itself. If a suit could be maintained at all at law, it would be against the members of the board as individuals, for failing to discharge their duty as public officers in levying the tax required by law to pay the debt of the county. This might be, to say the most, a very inadeqate remedy to the creditor. He, in making his contract, trusted to the ability of the county to meet the engagement, and not to the individual responsibility of the members of the board of police. The county, by the contract, became his debtor, and it is to the party trusted, that he has a right to look for payment. The board of police, as the public agents of the county, and as the officers of the law, undertook to do what was necessary and required of them by law, to compel the county to execute the contract. As public officers, they have failed in discharging their duty in this respect. As public officers their action is still necessary to enable the creditor to get his rights, as adjudged and settled by the board of police, and the question is, whether there is any other remedy than that by *mandamus* which can accomplish this object. If there be any other, counsel have failed to point it out, and it is certainly unknown to the jurisprudence of this State. Lord Mansfield said that the writ "ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." 3 Burr. 1267. To the same effect, 15 East, 117; 1 Cow. 417. There is, therefore, no doubt as to the remedy.

Judgment reversed, and peremptory *mandamus* awarded.