## NAPIER *v.* THE UNION COTTON MILLS.

The contract, a specific performance of which is prayed, embracing several distinct matters and being on its face severable, and the demurrer going to the petition as a whole and not separately to any particular part of it, and there being equity in the petition, at least as to the prayer for a conveyance of the ten acres of land upon which the plaintiff's mills have been erected, there was no error in overruling the demurrer, nothing being now decided as to the other relief prayed for in the petition.

March 19, 1894. Argued at the last term.

Equitable petition. Before Judge HENRY. Walker superior court. February term, 1893.

The Union Cotton Mills brought its petition against N. C. Napier for specific performance. Defendant's demurrer thereto was overruled, and he excepted. The petition alleges, that soon after the organization of plaintiff under its charter, defendant made to it the following proposition in writing:

"State of Georgia, Walker county. I, N. C. Napier, agree to donate ten acres of land No. 28 in the 7th district and 4th section of said county, bounded as follows: on the east by the railroad, on the north by original line, on the south by Mitchell hollow, and on the west by my land. I also further agree to give an option on twenty acres of land lying west of the land to be donated, at $25 per acre, to be paid for in stock if the co. prefers. I also bind myself to furnish all the water to the factory to be built under the present charter, for manufacturing purposes, provided said company will build a suitable and sufficient reservoir to hold the water as it gathers. It is further agreed that, in case said company should ever want all the water so as to stop my mill, that I will sell the said factory company my mill with its fixtures and my good will for the sum of $3,000. This Oct. 3d, 1891. In addition to the within, it is a part of my offer, if accepted by the directors of the Union Cotton Mills, to furnish all the needed right of way to and from the factory and to and from the residences of the operatives, through any land I may own at the time of signing this paper, lying on the west side of the C., R. & C. R. R. (Signed) N. C. Napier."

Said proposition was fully accepted by the directors of plaintiff immediately after it was submitted to them by defendant, and said land was surveyed, laid off and marked and the boundaries made by him, and the possession thereof turned over by him to plaintiff, which at once commenced to erect its factory and operatives' homes, storehouse, etc., on said land. It has now (January 23, 1893) constructed a factory and has the same in operation; it has also built its storehouse, operatives' houses, shops and other buildings on said land, and constructed a sufficient reservoir to hold all water needed

for the factory, and has fully complied with all the conditions of the contract on its part; but defendant upon demand refuses to make to it titles to said land with water privileges as stipulated by him in the contract, he knowing that but for the reason of the proposed donation and sale of said land and water privileges, the factory would not have been located on the land. Plaintiff is ready and willing to issue to him stock in the company as agreed in the contract, and now tenders the same to him. He owns the water privileges with power to control the water in the stream north of the factory, and the same might be cut off entirely from the factory, to its great damage and almost entire destruction. Defendant also owns the land lying east of the factory, and a mill on the stream southeast of the factory; and should the same be transferred with water privileges by defendant to an innocent purchaser, the right of plaintiff to water would be destroyed, to the destruction of the value of the factory. Plaintiff under its charter has the right to build a $500,000 factory, which was well known to defendant at the time he induced plaintiff to locate its factory on his land by his proposition aforesaid; and while plaintiff has commenced operations with a capital stock of $100,000 as it had a right to do under its charter, it was well known to defendant at the time that the company intended to increase its capital stock as rapidly as it could, and if possible erect a $500,000 factory; and but for the fact that the company had, under the contract or proposition of defendant, a right to a sufficient amount of water to operate a factory to be built to the extent of the charter, plaintiff would never have accepted the proposition of defendant, which was well known and understood by him at the time; and the proposition was made with that understanding on the part of plaintiff and the directors of the company. Plaintiff has reason to apprehend that defendant

will sell or dispose of his lands adjoining the factory, his mill and water privileges, and thus defeat plaintiff in its right under the contract; in such event he is wholly unable to answer in damages for the injury which would be done to the company. Plaintiff is informed that, since the execution of the contract, defendant has created a lien on the property, or conveyed title to secure a debt, and has to a certain extent complicated the matter; and on account of his inability to answer in so great damages, he is in that sense insolvent.

By amendment plaintiff alleges, that said proposition was made by defendant to induce plaintiff to locate its mill on said land, in order that the remaining lands of defendant would be enhanced largely thereby; and that his lands have been largely enhanced in value by the location of the mill. Further, before the commencement of any work by plaintiff on the land, and after the proposition of defendant had been made and accepted by plaintiff, defendant had the land laid off and marked, showing the exact boundary, to wit: commencing on the north line of said lot at a point where the right of way of the C., R. & C. railroad crosses said line, thence south to a pine stump (with said railroad right of way), said stump being in the Mitchell hollow, thence west to the west boundary of said lot of land No. 28, thence north to northwest corner of said lot, thence east to the beginning, said tract of land containing 30 acres more or less. The cotton mill was located on said land wholly on account of the proposition of defendant; and but for the fact that the proposition had been made and the land laid off and marked, defendant would not have located its factory on the land. Said location was made on account of the contract for land and water; and plaintiff proposed to deliver to defendant stock for the land as stipulated in the contract, upon the delivery of deed for said land with water privileges and right of

way as stated in the contract, and has always stood ready to deliver said stock upon the delivery of the deed. Defendant had subscribed to the capital stock of the company in the sum of $1,000, but has never paid any of said stock except $250; and it was the direction of the directors of plaintiff that the defendant should have credit on his subscription for the amount of the value of said land. The stock in payment of said twenty acres was tendered to defendant prior to the filing of this suit; plaintiff has at all times been ready to deliver said stock to defendant, and it has been subject to his order since the date of the tender; and plaintiff makes the same a continuing tender, etc. The prayer of the petition is, that defendant be required by decree to make deed to the lands and water privileges and rights of way as shown in his proposition aforesaid, etc.

The grounds of demurrer are as follows:

(1, 6) The alleged contract is too vague, uncertain, indefinite and doubtful on its face to be acted upon by the court, and is not capable in its nature of being the subject of a decree for specific performance; and plaintiff does not present in his petition a case which entitles him to the relief he seeks, or any other relief which a court of equity can afford. (2) The agreement set out, in addition to the uncertainty of its terms as to the volume or quantity of water to be furnished, is also uncertain as to the time at which it is to be furnished, which uncertainty is such as could not be settled by decree. Countless questions of dispute might afterwards arise, which cannot now be determined. (3) The alleged agreement does not define the boundary of the twenty acres of land named therein, nor furnish such description of the property as will authorize the court to decree title to the same. (4) The alleged agreement only provides for an option upon the twenty acres of land, but fixes no time for its execution, nor the terms of the option; and

plaintiff's prayer is for a deed and not for an option, which prayer is at variance with the charges in the petition, as well as with the terms of the agreement. (5) The petition admits that plaintiff took possession of and improved the real estate referred to, with no other authority than that set out in the agreement; and also admits that plaintiff has paid no consideration to defendant, for the land, and that the ten acres referred to was to be a donation. The agreement nowhere refers to any deed or time for option. Therefore plaintiff, having of its own motion, by its own laches and negligence, and with full knowledge of all the facts upon which it asked relief, entered on the lands as it admits, cannot now be heard in a court of equity to complain as to matters, conduct, acts or agreements untainted by fraud on part of defendant, and in which it voluntarily took part and risk, but is estopped from complaining against its own acts, and will be left to its remedy at common law, if any. (7) The agreement establishes, if anything, a relationship which could have been revoked by plaintiff at any time. As to the twenty acres of land, an option was given to plaintiff, if anything; as to the water privileges, plaintiff has never sustained any relation to defendant that could not be revoked at any time by plaintiff; and as to the ten acres of land, the donation may or may not be refused.

NAPIER & COX and COPELAND & JACKSON, for plaintiff in error. LUMPKIN & SHATTUCK, *contra.*

LUMPKIN, Justice.

The Union Cotton Mills filed an equitable petition against Napier, praying the specific performance of a contract made by him with the plaintiff. This contract was in the form of a written proposal by Napier, which was fully accepted by the directors of the plaintiff. A copy of the same appears in the reporter's statement.

The petition alleges, in effect, that the consideration of Napier's contract was the undertaking by the plaintiff to build a factory upon the land referred to in his proposal, and that, in point of fact, the factory has been built at an expense of about $100,000. It does not unequivocally appear that the factory was erected upon the ten acres to be donated by Napier, but this is the only reasonable inference to be drawn from the petition, taking it as a whole. We see no reason why Napier should not be required to perform at least so much of his contract as requires him to convey this tract of ten acres to the plaintiff. The description of the same in the written contract is sufficiently definite to identify it; and besides, it appears from the allegations of the petition that, immediately after the acceptance by the plaintiff of Napier's proposition, he caused all the land referred to in the contract, including the ten acres he had agreed to donate, to be surveyed and the boundaries marked, and had delivered possession of " said land " to the plaintiff.

Under these facts, it would be simply monstrous to allow Napier to retain the title to the ten acres, which, beyond all question, belong to the plaintiff because of the full and complete performance of its contract, as above stated. An examination of the written instrument will show that, as to the several matters embraced in it, it is severable, and there can be no difficulty in enforcing so much of it, at least, as relates to the ten acres of land; the demurrer, though based on several grounds, being general and going to the petition as a whole, and not separately to any part of it. There was certainly equity in the petition, at least to the extent indicated, and for this reason the court committed no error in overruling the demurrer.

As to the several other matters embraced in the contract, we do not at this time decide anything. If, after a

trial of the case in the superior court, and a full development thereby of all the questions of law and fact involved, it should become necessary for this court to pass upon these questions, it will be time enough to do so then. In view of the great volume of business now pending before this court, and which the constitution requires us to dispose of within a limited time, we cannot now undertake to settle questions which may not arise at all when the case is fully investigated. The demurrer was general; the decision of the trial judge upon it was general, and so we rule generally that there was enough in the petition to withstand a demurrer of this kind.

*Judgment affirmed.*