THE STATE OF KANSAS, ex rel. C. C. Coleman, as Attorney-general, v. HENRY O. TRINKLE.

No. 14,047.    (78 Pac. 854.)

SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS—County Attorney—Quo Warranto—Issue. In an action of quo warranto to remove from office a county attorney charged with violating his duty in respect to the enforcement of the prohibitory liquor law the issue of primary importance is that concerning the defendant's good faith in his official conduct.

2. ———— Presumption of Good Faith—Burden of Proof. Upon the trial of such an action the law presumes that the defendant

acted in good faith in all the matters charged against him, and the burden rests upon the state to show otherwise by a preponderance of the evidence.

3. ———— *Prohibitory Liquor Law—Duty of County Attorney.* A county attorney is not obliged to institute proceedings for the punishment of offenders against the prohibitory liquor law upon his own knowledge; but whenever notified by an officer or other person of any violation of that law it is his duty forthwith to exercise diligently all the authority conferred on him by law for the purpose of disclosing, prosecuting and punishing the offender.

4. ———— *Evidence of Violations.* Upon the trial of an action of the character referred to in paragraph 1, evidence that saloons were run openly and publicly in the defendant's county is relevant as bearing upon his motives in dealing with specific offenses of which he had been duly notified.

5. ———— *Duty of County Attorney — Evasion.* If a county attorney be notified of a violation of the prohibitory liquor law, and be furnished with the names of witnesses by whom the fact of such violation may be established, he cannot unnecessarily delay an investigation of the matter, or a prosecution, if the facts warrant, merely because the city in which the offense occurred is about to institute, or has instituted, proceedings under its ordinances for punishing the offense. His duties are not dischargeable by the city authorities, and a city prosecution is is not a mere substitute for a prosecution by the state.

6. ———— *Evidence Insufficient.* The evidence in this case canvassed and declared to be insufficient to warrant the defendant's removal from office.

Original proceeding in *quo warranto.* Opinion filed December 1, 1904. Judgment for defendant.

*C. C. Coleman,* attorney-general, *E. C. Warfel,* and *Welch & Welch,* for The State.

*James D. Snoddy,* and *John C. Cannon,* for defendant.

The opinion of the court was delivered by

BURCH, J.: This action is original in this court. It was brought by the state of Kansas, on the relation of the attorney-general, for the removal from office of Henry O. Trinkle, the county attorney of Linn

county.    The petition contains four separate accusations, which may be summarized briefly as follow :

(1) That one Harry Tyler and four other individuals named were, within the defendant's term of office, engaged in the wilful and notorious sale of intoxicating liquors in violation of law, in the defendant's county ; that the facts of such violations were well known by the defendant from information received from others, as well as from his own observation and experience ; that with knowledge of the facts he neglected and refused to prosecute the offenders ; and that, by giving them information of complaints against them, he encouraged them to continue to violate the law.

(2) That on a day named Mrs. Della M. Adams and Mrs. Emma W. Morse personally notified the defendant that the provisions of the prohibitory liquor law were being violated by one Harry Tyler, furnished the defendant with a list of witnesses by whom such violations might be established, and requested him to inquire into the facts, and if the information given were found to be correct to prosecute ; but that the defendant, knowing from personal observation and otherwise that Tyler was violating the law, refused to accept the list of names tendered, and refused to take any legal action whatever in the premises.

(3) That on the day referred to in the second charge the city marshal of Mound City personally informed the defendant that Harry Tyler was violating the law, offered the defendant a list of witnesses by whom such violations could be established, and requested him to take such action as the law required, but that the defendant refused and neglected to move in the matter.

(4) That upon the complaint of the mayor of the

The State v. Trinkle.

city of Prescott the defendant did write and file in the district court an information against one Van Brittingham for violating the prohibitory liquor law, and that a seizure of liquors under the warrant which was issued followed; that the defendant advised and requested that personal service of the warrant be not made, but that the sheriff rejected the advice and refused the request; that at the solicitation of the defendant Van Brittingham paid to the city of Prescott the sum of $100, and entered into a written agreement to refrain from violation of the law and generally to be a good citizen; that the mayor and city council of Prescott then petitioned that the case be dismissed, and that the defendant corruptly agreed to dismiss it; that Van Brittingham paid to the defendant the sum of $150 as a reward and bribe to influence his conduct as county attorney, pursuant to which he did move to dismiss the action; that the defendant had reason to know, and did know, at the time he filed the motion to dismiss, that Van Brittingham was guilty, and that his guilt could be proved; that the arrangement to dismiss had been brought about by the defendant, and that his conduct was corruptly influenced by the desire to shield and protect Van Brittingham from the penalty of his crimes, and by the corrupt receipt of the money referred to.

The defendant answered fully, denying all charges of corruption, improper motive, and wrongful purpose, denying the truth of the principal facts alleged against him, explaining others, and setting forth additional facts in justification of his conduct.

Upon the issues thus presented evidence has been taken and submitted, and the cause has been orally argued by counsel for the state and for the defendant.

After due consideration of the questions involved, the court has reached the conclusion that the state cannot prevail, because those questions belong almost entirely to the domain of fact, and exhaustive discussion of the case would be unprofitable ; but because of its importance some statement relating to matters of primary significance is doubtless due.

The statutory basis of the action is found in section 1852, General Statutes of 1901, which reads as follows :

"If any board of county commissioners, or any commissioner, or any other county officer, shall neglect or refuse to perform any act which it is his duty to perform, or shall corruptly or oppressively perform any such duty, he shall forfeit his office, and shall be removed therefrom by civil action in the manner provided in the code of civil procedure."

Before his induction to office can take place a county attorney is required to take an oath to support the constitution of the United States and the constitution of the state of Kansas, and faithfully to discharge the duties of his office. (Gen. Stat. 1901, § 4283.) It is the duty of the county attorney to appear in the several courts of his county, and to prosecute on behalf of the people all criminal suits, applications or motions arising under the laws of the state in which the state or his county is a party, or is interested. (Gen. Stat. 1901, § 1777.) He is the legal adviser of all civil officers of his county, and is forbidden to receive any fee or reward for his services from any person except such as are allowed by law. (Gen. Stat. 1901, §§ 1779, 1780.) Special definitions of his duty regarding the prosecution of liquor cases are included in the statutes relating to that subject.

If the county attorney be notified by an officer, or other person, of any violation of the prohibitory liquor law, it is his duty forthwith diligently to inquire into

the facts of such violation, and for that purpose extraordinary powers have been conferred upon him. (Gen. Stat. 1901, § 2472 ; Laws 1901, ch. 233, § 1.) If the inquiry disclose the fact that an offense has been committed he must institute proceedings for its punishment.   (Gen. Stat. 1901, § 2473.)   It is his duty diligently to prosecute any and all persons violating any of the provisions of the prohibitory liquor law in his county, and if he fail, neglect or refuse faithfully to perform any duty imposed upon him by that law he is subject to fine and imprisonment as in ordinary cases of misdemeanor ; and if he be convicted of a dereliction of duty he forfeits his office as a part of the penalty.   (Gen. Stat. 1901, § 2476.)

From this it is apparent the legislature demands that the county attorney shall measure up to the full height of a lofty standard of duty.   He is appointed to keep guard in front of sacred temples ; he is the exponent and defender of the social order ; through him the law and the administration of justice must be vindicated ; his official character must be the very incarnation of respect for law and obedience to law, and if he turn traitor to his oath he becomes a moral perjurer, and degrades himself to the level of a criminal.

In the conduct of his office the county attorney need acknowledge no master but the law.   He may close his ears to every kind of constraining clamor so long as he pursues no policy except that which duty prescribes.   He must be accorded a reasonable discretion in directing the business of his office, and some scope must be conceded to him for the exercise of his best judgment in respect to many matters committed to his charge, including even the commencement and the dismissal of cases ; but this discretion must always obey the promptings of probity and the

26—70 KAN.

unfeigned desire to accomplish the legislative will. His judgment must be candid, honest, and sincere, and his conduct must be undissemblingly consonant with the obligations of his oath. The distinguishing characteristic of every official act must be genuine good faith.

The law presumes that the defendant in this case conducted himself in the manner described with reference to all the matters charged against him, and the burden rests upon the state to show the contrary to be true, by a preponderance of the evidence.

The first and second of the charges contained in the petition impute to the defendant knowledge of violations of the prohibitory law in his county from personal observation and experience. If these accusations were proved to be true they would not of themselves entail forfeiture of office in the event of a failure to prosecute. The precise question was passed upon by this court in the case of *The State, ex rel., v. Foster*, 32 Kan. 14, 3 Pac. 534. In ruling upon the admission of testimony in that case Chief Justice Horton said:

"We do not understand the law to require a county attorney, upon his own knowledge, to commence criminal prosecutions, but we do understand that when he has received notice from 'any officer or other person,' of the violations of the law, he shall forthwith diligently inquire into the facts of such violation, and if, upon inquiry, he ascertains that the law has been violated, he shall file a complaint as prescribed by the statute. . . . A motion is also made to strike out all the testimony tending to show that parties had seen the defendant in saloons, and also had seen him drinking therein. We think it competent to introduce evidence of this kind to show that after the county attorney received notice that certain parties were violating the law, he had actual notice thereof from his own personal knowledge. This tends to show his motives in the prosecution of the cases mentioned in

the petition, and may have something to do in disclosing his intent in dismissing the cases against the parties violating the law." (Pages 25, 26.)

And in charging the jury the law was announced in the following language :

"There has been evidence introduced in this case tending to prove the defendant visited the various saloons kept and operated by the parties mentioned in the petition, and from his own observations and experience knew all the persons charged were guilty of violations of the provisions of the prohibitory act. Evidence has also been introduced tending to prove no prosecutions were commenced by the defendant against any of the parties selling intoxicating liquors in Saline county in violation of law, and, also, evidence has been offered tending to prove the saloons were run and operated in that county openly and publicly. This character of evidence has been admitted to show the motives of the defendant, but not for the purpose to have you understand that it was his duty, upon his own knowledge, to commence prosecutions or file complaints." (Page 33.)

No attempt has been made to show that the defendant was informed of violations of the law by any of the parties named in the first charge except Tyler. The only notifications he received concerning Tyler are those specifically referred to in the second and third charges. There is no evidence that the defendant ever gave notice to any of the parties named in the first charge of complaints made against them, or ever encouraged them to violate the law ; and the bearing upon the conduct of the county attorney of the fact that violations of the law were open and notorious in his county is fully covered by the instructions to the jury in the Foster case. Therefore, the first charge has not been sustained.

The second and third charges may be discussed

together. The defendant did not refuse to accept the list of witnesses tendered him by Mrs. Morse and Mrs. Adams. They desired to keep the original list, but the defendant made a copy of it when it was presented to him, and said he would investigate. The list of witnesses furnished by the marshal was identical with the other. When it was shown to the defendant he said he would see the marshal again. On the following day, or on the second day following, Tyler left the county and has not since returned. The defendant avers ignorance of his whereabouts, and the state does not show that he can be reached either by a warrant or by a requisition. From all the evidence the court is unable to say that the delay was unreasonable, or was occasioned by a desire to evade the performance of duty.

In his answer the defendant pleaded facts showing a virtual and apparently commendable cooperation with the city authorities of Mound City in respect to the prosecution of Tyler, whereby the city was to proceed first on account of the long time intervening before a term of the district court, and the claimed impracticability of a prosecution before a justice of the peace under local conditions. The evidence does not support the answer to its full extent, and, though the whole matter was immediately cut short by Tyler's disappearance, it is proper to observe that the duties of the county attorney as the representative of the state are not dischargeable by the city, and a city prosecution cannot be made a mere substitute for a prosecution by the state. Cities may provide by ordinance for the prohibition of the sale of intoxicating liquors contrary to law, and the suppression of liquor nuisances. (Gen. Stat. 1901, § 2499 ; Laws 1901, ch. 232, § 7.) But if the mayor, marshal, police judge

or police officer of any city or town have notice. or knowledge of any violation of the prohibitory liquor law he is subject to fine and forfeiture of office unless he notify the county attorney of the fact of such violation, and furnish him the names of any witnesses within his knowledge by whom the fact of such violation may be established. (Gen. Stat. 1901, § 2462.) Upon the receipt of such notice and the names of such witnesses it is, of course, the duty of the county attorney to proceed, and the mere fact of a contemplated or pending prosecution by the city is not sufficient to stay his hand or to excuse inactivity.

The evidence under the fourth charge is insufficient to show cause for a forfeiture of the defendant's office on account of the circumstances connected with the arrest of Van Brittingham. At the time of the arrest the prosecuting witness, who was the mayor of the city in which Van Brittingham had been operating, was endeavoring to procure a dismissal of the case. He sincerely desired to aid in the rehabilitation of Van Brittingham's character by some other method than that of fine and imprisonment. Hence he argued to the sheriff that he did not believe in pulling a young man down when he wanted to reform. The sheriff understood the defendant to suggest in this connection that the warrant could be held up, and then to say that the legitimate way would be for the sheriff to serve the warrant, for Van Brittingham to give bond, and then to let the matter go before the district court. The defendant further explains that, after the mayor had spoken, Van Brittingham said he did not want to be arrested then, and the sheriff replied that he must either give bond or go to jail; and that he then interposed. with, "You don't have to be arrested; you have your bondsmen here; if

Mr. Evans will go your bond all you have to do is to give bond." This is substantially all of the affair, and neither by itself nor taken in connection with the other circumstances of the case does it bear any such vicious or sinister aspect as the state would have appear.

The evidence is clear to the effect that the arrangement between the city of Prescott and Van Brittingham was not made at the defendant's solicitation, but that it was the result of negotiations suggested by a member of the city council, and conducted and concluded without the defendant's cognizance or aid, except that before any of the terms were agreed upon he expressed the mistaken opinion that the scheme suggested could be legally consummated. The evidence does not warrant the inference that the expression of that opinion was the result of any desire to shield Van Brittingham, or that it was prompted by any corrupt motive. No fair interpretation of the evidence can lead to the conclusion that Van Brittingham paid the defendant the sum of $150 as a reward or bribe to influence his official conduct; and from the evidence it cannot be said that the motion to dismiss was filed under any corrupt incentive of personal gain, or that the defendant corruptly agreed to dismiss the Van Brittingham case.

The mayor and council of the city of Prescott appear to have concluded that it would be best for the young man, Van Brittingham, and best for their community to dismiss the pending prosecution upon certain terms. Those terms included the payment of the costs of the case. Van Brittingham's engagements were embodied in a written instrument which he signed. Then the city council and a number of prominent citizens of Prescott petitioned the mayor, in

writing, to request the county attorney to enter a *nolle prosequi* in the case. It is a matter of common knowledge that petty criminal cases are frequently dismissed because of the kindly, if uncritical, belief that sometimes justice may be best subserved by extra-legal means. The defendant had advised the parties that the matter must be presented to the district court by motion, and there is no reason to doubt that he believed the motion would be sustained. He undertook to comply with the request of the mayor and the desire of the petitioners, evidently not in any effort to be dishonest or to thwart the law, but because of an injudicious belief that the proposed conduct satisfied the requirements of the case. Van Brittingham's agreement tacitly admitted a violation of the law. When the costs provided for in the agreement were computed the defendant simply included county attorney's fees in the same manner as if Van Brittingham had been found guilty, and the costs so estimated were paid. The whole matter was adjusted and settled in the most open, frank and public manner possible.

It is true the statute provides for the recovery of county attorney's fees in liquor cases only in case of a conviction. The defendant had no right whatever to the money, and ought not to have been guilty of any misconception of the law; but, since his relations had all been with the city authorities and not with Van Brittingham, since he had made no agreement whatever with Van Brittingham, and since the agreement of the city with Van Brittingham was not in any sense made for the defendant's benefit, it is difficult to see how his conduct was affected by the matter of fees; and, taking into consideration the presumption of uprightness in the discharge of official duty, and the defendant's denial of intentional wrong-

doing, the evidence is best interpreted upon the basis of his good faith.    Under a state of facts but slightly different justice would doubtless demand, besides a removal from office, a forfeiture of the right to practice law and the imposition of the penalties prescribed by the criminal law.

The only remaining element of the fourth charge is that the defendant voluntarily moved to dismiss a criminal action pending against a person whom he knew to be guilty.    The essential character of his conduct in this respect, however, has been sufficiently discussed.    After the settlement with Van Brittingham, but before the motion to dismiss was filed, the defendant was admonished by the attorney-general that criminal cases must not be disposed of in the manner desired by people of the city of Prescott. The defendant, however, regarding the settlement as an accomplished fact and the product of honest intentions and good motives, submitted the whole matter to the judgment of the district court.    He concealed nothing, and shaded nothing.    Van Brittingham's agreement and the citizens' memorial were attached as exhibits to the motion, and there is nothing to indicate that the district court denied the motion upon any other ground than the inherent impropriety of those documents as reasons for the disposition of the case proposed.

In conclusion it may be said that the legislature has defined the attitude which a county attorney must bear toward the prohibitory liquor law; and the observation made in Deuteronomy, xxx, 11–14, following a promulgation of law, is pertinent:

"For this commandment which I command thee this day, it is not hidden from thee, neither is it afar off.    It is not in heaven, that thou shouldest say,

Who shall go up for us to heaven, and bring it unto us, that we may hear it, and do it? Neither is it beyond the sea, that thou shouldest say, Who shall go over the sea for us, and bring it unto us, that we may hear it, and do it? But the word is very nigh unto thee, in thy mouth, and in thy heart, that thou mayest do it.''

The judgment of the court is for the defendant.

All the Justices concurring.