CITY OF ATLANTA *et al. v.* BLACKMAN HEALTH RESORT INCORPORATED.

1. The court erred in refusing to permit Dr. Blackman, a witness for the plaintiff, to answer a question propounded to him on cross-examination by counsel for the defendants, seeking to elicit the fact that the plaintiff had not filed, with its last application for a permit to erect its building for a health resort, any statement showing what class of persons were to be admitted to this institution, as required by section 1430 of the city code of Atlanta, which section is applicable, under the issues in this case.

2. (1) The court erred in failing to charge the jury that, under the issues made by the pleadings in this case, plaintiff was not entitled to a mandamus unless plaintiff showed that it had complied with the ordinances of the City of Atlanta set out in sections 729 and 1430 of the city code.

3. (1) The court erred in failing to instruct the jury that, if it appeared from the evidence that the plaintiff had failed to file with his application a statement of the class of persons he intended to treat in the proposed institution, as required by section 1430 of the code of Atlanta, the plaintiff would not be entitled to demand a permit for the erection of said institution.

4. (1) The court, whether requested or not, should give the jury appropriate instructions on every substantial issue in the case presented by the pleadings and evidence.

5. (1) To entitle one to the writ of mandamus it must appear that he has a clear legal right to have performed the particular act which he seeks to have enforced.

6. (2) The sixth, eighth, and ninth grounds of the motion for new trial do not set forth the facts under which the rulings complained of were made; and this court is unable therefore to say whether any error was committed by the court in the rulings therein complained of.

7. (3) The court is not shown to have erred in refusing to permit counsel for defendants to read to the jury certain letters and a petition which had been previously admitted in evidence, the court ruling that these documents ought to have been read when introduced and that they could be read to the jury in the argument, and it not appearing that they were not so read, nor that counsel was deprived of the right to fully argue the case by having to read these papers while arguing the case to the jury.

8. (4) The court did not err in charging the jury that if the city council refused to permit the plaintiff to build its sanitarium because the members of the city council did not individually want a building of that sort in their own immediate neighborhood, and, for this reason alone, would not grant a permit, such reason was not a good reason in law to refuse the permit, and that the action of council, based on such reason alone, was arbitrary.

9. (4) The court did not err in charging the jury that the city council had no right to refuse the permit for the erection of the plaintiff's building, unless the erection would prove in some way injurious to the public health, public safety or public morals, or public convenience or public comfort, under the previous decision of this court in this case.

10. (5) The court erred in giving to the jury an instruction not involved under the pleadings or evidence.

11. (6) The judgment of the mayor and city council of Atlanta refusing to grant the plaintiff a permit to erect this building upon its previous application therefor, after a full hearing, was binding and conclusive upon the plaintiff, unless appealed from, or directly brought before the court for review; and for this reason the writ of mandamus should have been refused.

No. 2805.   MAY 20, 1922.

Mandamus.   Before Judge George L. Bell.   Fulton superior court.   August 9, 1921.

For the allegations of the plaintiff's petition for mandamus, see *Blackman Health Resort* v. *Atlanta,* 151 *Ga.* 507 (107 S. E. 525), when this case was here on demurrer. In their answer the defendants denied that the petitioner was incorporated for the purpose of building a tourist and health resort, but for the purpose of building and operating a sanitarium for the treatment of diseases and the care of sick persons. In its three former applications for a permit the plaintiff used the word " sanitarium " to designate one of the purposes for which its building was to be used. This word was written in the last application, but stricken therefrom as an afterthought. Dr. Blackman, at the time of filing the application, informed the building inspector that patients were to be received in the building for treatment. Said application did not state what classes of persons were to be received therein, or what diseases were to be treated.

The defendants denied that the petition for mandamus set forth fully the objections urged against the grant of this permit, but alleged that among these objections was one which set up that the applicant had not complied with section 1430 of the code of the City of Atlanta, which requires applications to state what

classes of persons are to be treated in same. The defendants in their answer further alleged that another objection to the grant of such permit was urged before the city council, and that was that said application was considered most carefully and at great length by the mayor and general council, on several occasions. It was heard in detail by the mayor on one occasion. It was heard for several hours on two occasions before the committee on hospitals, to which it was referred. It was argued three times in the general council. Every opportunity was given to the applicant and to the objectors to present their reasons for and against this permit. They allege that this permit was refused upon the merits and in the exercise of their sound judgment and discretion; and that the matter became res judicata when the plaintiff's last and fourth application was heard.

The defendants' counsel admitted that the plaintiff, with its application for a permit, filed with the building inspector the plans and specifications of the proposed building, which were approved by the latter. The plaintiff introduced voluminous evidence tending to show that the health resort would produce none of the evil consequences set out in the objections urged by neighboring property owners, but would benefit property in the vicinity. The defendants introduced evidence tending to show that this health resort would produce the objectionable consequences alleged in the various objections to the grant of this permit. It was shown by uncontradicted evidence that the plaintiff had made three previous applications for this permit; and that the plaintiff was fully heard before the mayor and general council on the second and third of these applications, both sides appearing by counsel, introducing evidence, and being fully heard; and that on each of these occasions the city council decided against the applicant.

A verdict was rendered in favor of the plaintiff. The defendants moved for a new trial; the motion was overruled, and error is assigned on this ruling.

*James L. Mayson, Jesse M. Wood,* and *William A. Fuller,* for plaintiffs in error.

*Colquitt & Conyers,* contra.

HINES, J. (After stating the foregoing facts.)

1. We deal first with the fourth, tenth, eleventh, and twelfth grounds of the amendment to the defendants' motion for new trial.

In the fourth ground it is alleged that the court erred in refusing to permit Dr. Blackman, witness for the plaintiff, to answer a question, propounded to him on cross-examination by counsel for the defendants, seeking to elicit the fact that the plaintiff had not filed, with its last application for a permit to erect its building for a health resort, any statement showing what class of persons were to be admitted to this institution. The tenth ground complains that the court erred in charging the jury, that the ordinance or law involved in this case was section 729 of the city code of Atlanta, the court reading this section to the jury. The error assigned is, that, under the issues in the case, section 1430 of the city code of Atlanta was involved, and that the court should have so instructed the jury. The eleventh ground asserts that the court erred in failing to charge the jury, that, under the issues made by the pleadings in this case, the plaintiff was not entitled to a mandamus unless plaintiff showed that it had complied with the ordinances of the City of Atlanta set out in these sections of the city code.

In the twelfth ground it is alleged that the court erred in failing to charge the jury that if it appeared from the evidence that plaintiff had failed to file with his application a statement of the class of persons he intended to treat in the proposed institution, he would not be entitled to demand a permit for the erection of said institution. This involves the question, whether section 1430 applies to applications for permits to build the class of buildings which applicant proposes to build. Section 729 of the city code of Atlanta is as follows: "It shall be unlawful for any person or persons, or corporation, to construct, erect, or build a house to be used as a private sanitarium, hospital or boarding house, or other house of like character, wherein patients are kept, and medical or surgical treatment is given or performed, except in the following manner: The applicant shall file with the building inspector, in writing, a request for a permit to build, which shall plainly set forth the character of the building, and for what purpose it is to be used; if no objections thereto be filed within twenty-four hours, the same shall be granted; if objections, in writing, are filed by adjacent-property owners or near neighbors, within the time above specified, the application, and objections thereto, shall be transmitted to the Mayor and

General Council and a hearing and judgment had thereon, and the permit shall not be granted by said building inspector until directed so to do by the Mayor and General Council ·after hearing the applicant and the objectors." Section 1430 of this code is as follows:· " It shall be unlawful for any person or persons in this city to erect or maintain any hospital, infirmary, house .or place of refuge, or reformatory, or asylum, or other place where persons are received for reformation or treatment, without first having obtained the consent of the Mayor and General Council of said city for the erection and maintenance of the same; and all applications to the Mayor and General Council for permission to erect, maintain, or carry on any place for any such purpose must plainly and distinctly show the particular locality where the same is desired, for what purpose the same is desired to be erected or maintained, and what class of persons are to be admitted to the same. Any person or persons who shall violate the provisions of this ordinance shall, on conviction thereof, be punished by a fine of not more than one hundred dollars and imprisoned not exceeding thirty days, either or both, in the· discretion of the recorder's court, for each and every offense committed."

Section 729 of the city code of Atlanta makes it unlawful for any person, persons, or corporation " to construct, erect,· or build a house to be used as a private sanitarium, hospital or boarding-house, or other house of like character, wherein patients are kept, and medical and surgical treatment is given or performed;" and then prescribes the method by which a permit to build such house must be obtained.

This court held, when this case was here before, that " a building alleged to be used as a ' tourist and health resort ' is prima facie including in that class described " in the above ordinance. *Blackman Health Resort* v. *Atlanta,* 151 *Ga.* 507 (107 S. E. 525).

Section 1430 of the city code provides, " that it shall be unlawful for any person or persons in this city to erect or maintain any hospital, infirmary, house or place of refuge, or reformatory, or asylum, or other place where persons are received for reformation or treatment, without first having obtained the consent of the Mayor and General Council of said city for the erection and maintenance of the same; and all applications . . for permission to erect, maintain, or carry on any place for any such purpose must plainly

and distinctly show . . what class of persons are to be admitted to the same."

It is urged by able counsel for the plaintiff, that these two sections deal with two separate and distinct classes of institutions; and that for this reason section 1430 has absolutely no bearing upon the issues made under the pleadings in this case. Both sections embrace hospitals by name. Section 729 embraces private sanitariums. Webster's New International Dictionary defines a sanitarium as follows: "A health station or retreat." Plaintiff's health resort is a sanitarium, because it is a health station or retreat. Section 1430 includes houses or places of refuge. These latter are close kin to sanitariums, if not the same. Section 729 embraces boarding-houses or other places where patients are kept, and medical and surgical treatment is given. Section 1430, after naming hospitals, infirmaries, houses or places of refuge, reformatories and asylums, names "other places, where persons are received for reformation or treatment." Places where persons are received for treatment embrace boarding-houses or other houses of like character, where patients are kept, and medical and surgical treatment is given. But it is urged, that the "other places, where persons are received for reformation or treatment," in section 1430 follow the words "any hospital, infirmary, house or place of refuge, or reformatory, or asylum;" and upon the familiar doctrine of ejusdem generis and noscitur a sociis these "other places" must be of like kind with those which precede them. Where general words follow particular and specific words, the former must be confined to things of the same kind. *Sanders* v. *State,* 86 *Ga.* 717, 719 (12 S. E. 1058). This does not mean that the places named by particular words must be of the same kind as each of the places mentioned in the general words. It sufficeth if the former places are of the like kind with one or more of the latter places. It seems to us, that health resorts belong to the genus embracing hospitals, infirmaries, houses or places of refuge, reformatories and asylums. The genus likewise embraces private sanitariums, boarding-houses, or other places of like character, where patients are kept, and medical and surgical treatment is given. Section 1430 supplements section 729, and adds to the requirements of the latter. If we are correct in this, then the court should have permitted Dr. Blackman to answer the question

set out in the fourth ground of the motion. The court should also have instructed the jury that section 1430 was applicable to the issues included under the pleadings in this case, and that the applicant would not have been entitled to a permit to erect this building, if he did not state what class of persons were to be admitted to the same, the specific objection being urged before the city council that his application did not contain such statement.

To entitle one to the writ of mandamus, it must appear that he has a clear legal right to have performed the particular act which he seeks to have enforced. *Adkins* v. *Bennett,* 138 *Ga.* 118 (74 S. E. 838); *Cassidy* v. *Wiley,* 141 *Ga.* 333 (80 S. E. 1046, 51 L. R. A. (N. S.)128).

The court, whether requested or not, should give to the jury appropriate instructions on every substantial issue in the case presented by the pleadings and evidence, and failure to do so is cause for new trial. *Central Railroad* v. *Harris,* 76 *Ga.* 501; *Walker* v. *State,* 122 *Ga.* 747 (50 S. E. 994).

2. The sixth, eighth, and ninth grounds of the motion for new trial assign error upon rulings of the court refusing to permit W. A. Fuller to testify to certain facts, and in ruling out certain portions of his testimony. In none of these grounds are the facts set forth under which the rulings complained of were made. In the sixth ground it is not stated who objected to the question set out in this ground, or whether the defendants objected to this ruling. In the eighth ground it is not stated who moved to rule out the testimony therein set out, nor whether the defendants objected to the motion to exclude this evidence and the ruling of the court thereon. In the ninth ground it is not stated that the defendants made any objection to the action of the court in the premises. So this court can not consider these grounds because of the above defects.

3. In the seventh ground it is alleged that the court erred in refusing to permit counsel for the defendants to read to the jury certain letters and petition which had been previously admitted in evidence. The court ruled that these documents ought to have been read when introduced, and that they could be read to the jury in the argument. It is not stated that they were not so read, nor is it shown that counsel were deprived of the right to fully argue the case by having to read these papers while

arguing the case.  So harmful error, if any, is not made to appear.

4.  We deal next with the fifteenth and sixteenth grounds of the motion for new trial.  The charge complained of in the fifteenth ground is as follows:  " If the reason why the city council refused to permit the plaintiff to build its sanitarium was because the members of the city council individually did not want a building of that sort in their own immediate neighborhood, and for this reason and this reason alone would not vote to allow a building of that sort in the neighborhood of the objectors, then I charge you that such reason was not a good reason in law to refuse the permit, and that the action of council, based upon such reason alone, was arbitrary; and the jury should so find."  The charge complained of in the sixteenth ground is as follows:  " I charge you that council had no right to refuse the permit for the erection of plaintiff's building, unless the erection would prove in some way injurious to the public health, public safety, or public morals, or public convenience, or public comfort.  It would not be a good reason for refusing the permit that the erection of the building would injure the market value of adjacent homes, or that the presence of the building would make the adjacent property less desirable as places of residence, unless the erection of the building would have the effect of injuring the health or the morals, or the safety, or the convenience of the public."  Under the decision of this court when this case was here on demurrer, the charges complained of in these grounds are not error.  That decision is the law of this case.  Clearly, under this decision, the city council would not be justified in declining to grant a permit because the members individually did not desire a building of that sort in their immediate neighborhood.  For this reason alone the council would not be justified in declining a permit.  The charge in the sixteenth ground is in accord with this decision.  The majority of this court held that " it would be an arbitrary and illegal exercise of power to decline the permit, unless it were shown that the building is injurious to health and morals;" and this is now the controlling law of this case.  The charge was more favorable to the defendants than this decision, because it included the public safety and convenience as well as health and morals.

5.  In the seventeenth ground the defendants say that the court erred in charging the jury as follows:  " I charge you that even

after the building of plaintiff is built, if it should be built, still the same could not be operated as a sanitarium or tourist and health resort, without obtaining each year a license from the City of Atlanta; and that if said business should be operated improperly, the city authorities could refuse to issue license to run it." The errors assigned are, (1) that the same was prejudicial to the defendants, as the jury might more readily have been influenced to find in favor of the plaintiff, if, after the building was erected, it would have to take out a license to operate, which the city council could refuse if this health resort was not properly operated. This issue was not involved under the pleadings or evidence; and it was error for the trial judge to give the instruction set out in this ground, for this reason. Where such instruction might mislead the jury or prejudice them against the losing party, a new trial will be granted. *Collins* v. *Hutchins*, 21 *Ga.* 270 (2); *O'Neal* v. *Ward*, 148 *Ga.* 62 (2) (95 S. E. 709).

6. Among the objections filed by property owners with the city council, against the application of the plaintiff for a permit to erect this building, was one which set out that the right to this permit had been previously adjudged against it by the city council. This ground of objection is not set out in the plaintiff's petition for mandamus, which recites that it contains all the objections urged against the issuance of this permit; but the answer of the defendants denies this allegation of the petition, and alleges that the petition does not recite all of said objections, including the one with which we are now dealing. The undisputed evidence shows that the plaintiff filed an application for this permit, which was first granted by the city council; but the resolution of the council granting it was vetoed by the mayor. The plaintiff then filed a second application, which, after full hearing, was denied by council. He then made a third application for this permit; and the city council, after a full hearing, again denied the permit asked. Thereupon the plaintiff made a fourth application for this permit. Against the grant of the permit sought in this last and fourth application, property owners filed many objections, including those mentioned in the plaintiff's petition, and others among which was the one we are now considering.

Was this a good objection? Does the doctrine of res judicata apply under the law and facts of this case? This depends upon

the nature of those proceedings before the city council. If these proceedings were judicial or quasi-judicial, then the applicant was bound by the previous adverse judgments of that body. The rulings and decisions of certain executive or administrative officers, acting in the discharge of duties involving judicial or quasi-judicial action on their part, are accorded the effect of res judicata so far as to make them binding and conclusive unless appealed from or directly brought before the courts for review. The same rule applies to municipal boards when acting in a similar capacity. *Beall* v. *State,* 9 *Ga.* 367; Rubber Co. *v.* Goodyear, 76 U. S. 788 (8), 796 (19 L. ed. 566); Eureka Co. *v.* Bailey Co., 78 U. S. 488 (20-L. ed. 209); Kennedy *v.* Gibson, 75 U. S. 498 (19 L. ed. 476); Casey *v.* Galli, 94 U. S. 673 (24 L. ed. 168); U. S. *v.* McDowell, 21 Fed. 563; People ex rel. Best *v.* Preston, 62 Hun (N. Y.), 185 (16 N. Y. Supp. 488); Osterhoudt *v.* Rigney, 98 N. Y. 222; Longinette *v.* Shelton (Tenn.), 52 S. W. 1078; Crandall *v.* James, 6 R. I. 144; Natoma Water etc. Co. *v.* Clarkin, 14 Cal. 544; Gregory *v.* McPherson, 13 Cal. 562; Colusa Co. *v.* De Jarnett, 55 Cal. 373 (36 Am. R. 50); State *v.* Buffalo County, 6 Neb. 454; Kelly *v.* Wimberly, 61 Miss. 548; Carll *v.* Board of Police, 28 Miss. 38; Placer County *v.* Campbell (Cal.), 11 Pac. 602; Maxwell *v.* Board of Commissioners, 119 Ind. 20, 23 (19 N. E. 617, 21 N. E. 453); Sioux County *v.* Jameson, 43 Neb. 265 (61 N. W. 596); 28 Cyc. 1220. Under such circumstances a mandamus will be denied. People *v.* Preston, supra.

In what capacity did the city council act in passing upon the application for this permit? Did it act judicially or quasi-judicially, or was it performing a mere administrative act?

Section 729 of the code of Atlanta provides that "the applicant shall file with the building inspector, in writing, a request for a permit, which shall plainly set forth the character of the building, and for what purpose it is to be used. If no objections thereto be filed within twenty-four hours, the same shall be granted. If objections, in writing, are filed by adjacent-property owners or near neighbors, within the time above specified, the application and objections thereto shall be transmitted to the Mayor and General Council, and a hearing and judgment had thereon, and the permit shall not be granted by said building inspector until directed so to do by the Mayor and General Council after hearing the applicant

and the objectors." Clearly this provision provides for judicial action. It provides for a written application, written objections, a hearing, and a judgment. This court has said: "The duties of a municipal council are varied. Some are merely ministerial, some are legislative, some are executive; but there are still others which are judicial in their nature, and the determination of where the legislative or ministerial duty ends and where the judicial duty begins is often attended with extreme difficulty. Harris on Certiorari, § 48. Where the duty is purely ministerial, or purely legislative, the error can not be corrected by certiorari. But where the duty imposed upon the municipal council clearly requires the exercise of judicial powers, or even the exercise of quasi-judicial powers, the general rule is that an error committed may be reviewed on certiorari. 1 Smith on Mun. Corp. § 561." *Carr* v. *Augusta,* 124 *Ga.* 116 (52 S. E. 300). This doctrine was approved in *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (93 S. E. 887). Where a municipal council had the right to remove a policeman without or with a trial, but proceeded under the latter method, their judgment of removal could be reviewed on certiorari, while if they had pursued the former method their action would have been in the exercise of their executive functions, and not subject to review on certiorari. *Asbell* v. *Brunswick,* 80 *Ga.* 503 (5 S. E. 500). So it was held that "The mayor and city council, trying and dismissing their marshal, under and by authority of their charter and ordinances, upon a charge of malpractice in office or neglect of duty, by gambling in said city, were acting in the character of a judicatory, in the same sense in which that term is used in the constitution of our State; and the writ of certiorari to the superior court lies in such a case." *Mayor etc. of Macon* v. *Shaw,* 16 *Ga.* 172. This case was followed in *Gill* v. *Brunswick,* 118 *Ga.* 85 (44 S. E. 830).

A proceeding before the board of police commissioners, discharging a policeman after trial in the manner prescribed by the law creating this board, was quasi-judicial in its nature, and the judgment of the board was subject to review by certiorari, like any other tribunal exercising judicial functions. *Tibbs* v. *Atlanta,* 125 *Ga.* 18 (53 S. E. 811).

So it seems clear that the mayor and general council of Atlanta acted judicially or quasi-judicially in hearing the plaintiff's

former applications for this permit and the objections thereto, and in rendering judgment against the applicant. The plaintiff's remedy was to review this judgment by direct proceedings; and having failed to do so, the adverse decision became res judicata. The objection to its last application, setting up this objection, was good, the undisputed evidence showing the applicant was fully heard on his former application and the objections thereto.

*Judgment reversed. All the Justices concur.*