Replevin, 34 Cyc. p. 1532, n. 85 New; p. 1563, n. 36.

---

16682. BEAVERS *v.* INMAN *et al.*

1. Members of the police committee appointed under the charter and ordinances of the City of Atlanta were not legally disqualified, because of prejudice and bias, to preside in the trial of the chief of police for the alleged violation of a certain ordinance and certain rules of the police department. *Beavers v. Armistead*, 156 *Ga.* 833 (5) (120 S. E. 526); *Anderson v. Howard*, 34 *Ga. App.* 292 (129 S. E. 567).

2. Whether or not the pendency of other and previous charges alleging the same cause as those preferred in the present case would have constituted ground for abating the later charges (but see *Cabaniss v. State,* 8 *Ga. App.* 129 (5), 68 S. E. 849; *Hurst v. State,* 11 *Ga. App.* 754, 76 S. E. 78), it appears from the record that the plea in abatement was heard upon its merits, and that under the evidence adduced the com-

---

Certiorari, 11 C. J. p. 204, n. 73.
Criminal Law, 16 C. J. p. 68, n. 8.
Municipal Corporations, 28 Cyc. p. 492, n. 9 New.
Pleading, 31 Cyc. p. 329, n. 61.

mittee was authorized to find that the previous charges had been with-
drawn and dismissed before the institution of the present proceeding.
If the plea should be considered as a plea of former conviction, it
affirmatively appears that there was no conviction in the prior pro-
ceeding. See *Armistead v. Beavers*, 32 *Ga. App.* 464 (124 S. E. 61).
The superior court did not err in affirming the committee's finding
against the plea in abatement.

3. The rule of the police department of the City of Atlanta providing that
the chief of police "will, as often as possible, pay frequent visits at
unusual hours to various portions of the city, that he may be able to
know, of his own knowledge, that the officers and men are performing
their duties," is too uncertain and indefinite in its terms to be capable
of a strict and literal enforcement. It could be upheld (if at all) only
as a legislative guide, in the nature of a declaration of policy, to be
observed by the officer in the exercise of discretion, with due regard to
all the duties devolving upon him. Assuming that under this construc-
tion the regulation is valid, there was no evidence showing, or tending
to show, that the plaintiff in error violated it, and his conviction on a
charge of such violation was illegal.

4. The superior court erred in not sustaining the certiorari as to such
conviction.

DECIDED MAY 14, 1926.

Certiorari; from Fulton superior court—Judge Bell. April 18,
1925.

*Spence & Spence,* for plaintiff in error.

*J. L. Mayson, J. M. Wood, C. S. Winn,* contra.

BELL, J. James L. Beavers, chief of police of the City of At-
lanta, was tried by the police committee of the general council of
that municipality upon charges preferred by Edward H. Inman, a
member of the committee. The accusation was in four counts,
styled and set forth as "specifications" 1, 2, 3, and 4. Count 1
charged in general terms the violation of rule 22 of the police de-
partment, which provided that the chief of police "will, as often as
possible, pay frequent visits at unusual hours to various portions
of the city, that he may be able to know, of his own knowledge,
that the officers and men are performing their duties." Count 2
charged the violation of an ordinance which was in language iden-
tical with the above. Count 3 alleged the infraction of rule 39 of
the police department, which provided that "no member of the
detective or police department will be permitted to work divorce
cases, nor will any member of the police department knowingly be
allowed to work on cases that will lead up to divorce proceedings."
Count 4 averred that the said Beavers as chief of police had falsely
made an affidavit that on account of his poverty he was unable to

pay the court costs in a named judicial proceeding to which he was a party, and thus had violated a certain rule of the police department, which provided that "members of the police department are required to speak the truth at all times and under all circumstances, whether under oath or otherwise," and that anyone "who wilfully departs from the truth [is] considered unfit for service."

The respondent made a motion to disqualify certain members of the committee, demurred generally and specially, and pleaded in abatement, and answered. The motion to disqualify and the demurrers were overruled. The committee tried the issue formed by the plea in abatement and found against the plea. The trial on the merits resulted in the respondent's conviction of the charges specified as 1, 2, and 4, and in his acquittal of charge number 3. Whereupon the committee ordered his discharge from the police department. By petition for certiorari he excepted to all of the rulings and findings against him. The judge of the superior court set aside the conviction of charge number 4 as being contrary to evidence and without evidence to support it, but affirmed the other rulings and findings of the committee, with the direction that the case be remanded to the committee "to pass such judgment upon their findings as to them should seem meet and proper," the purpose of which direction was "to allow the committee to reconsider, if it so desires, its judgment, in view of the fact that specification No. 4 is stricken, and, if they see fit, to resentence" the respondent upon specifications 1 and 2, both of the others being then eliminated. The respondent thereupon brought the case to this court for review.

The grounds of the motion to disqualify and the facts touching the plea in abatement are sufficiently indicated in the headnotes. The committee did not err in overruling the motion, nor in finding against the plea, and the superior court committed no error in overruling the certiorari so far as it related to these matters. The special demurrers were to specifications 3 and 4 only, and, in view of the history of the case as to these charges, counsel have not sought any decision by this court in reference to these demurrers. And we will not pass upon the general demurrer. This demurrer having challenged the sufficiency of the accusation as a whole, without reference to any particular count, was properly overruled if any one of the counts alleged cause for the respondent's dis-

cipline or removal. Hence, a determination of the question raised by the general demurrer would involve a decision as to the sufficiency of each separate count of the accusation. *Lowe* v. *Burke,* 79 *Ga.* 164 (2) (3 S. E. 449) ; *Napier* v. *Union Colton Mills,* 93 *Ga.* 587 (20 S. E. 80) ; *Hudson* v. *Hudson,* 119 *Ga.* 637 (46 S. E. 874). One of these counts (number 3) was eliminated by an acquittal at the hands of the committee, and the conviction on another count (number 4) has been set aside by the judgment of the superior court, and no exceptions to that judgment have been taken by the municipality. Counsel for both sides have treated the case as if these counts were of no concern in the present inquiry. Thus, if we undertook a consideration of the demurrer to the accusation as a whole, we would at once be confronted with questions to which counsel have not even remotely addressed themselves, if not with questions actually moot under the instant writ of error, concerning, as they do, the sufficiency in law of counts 3 and 4. In these circumstances, and especially in view of the opinion which we entertain, and will later express, as to the exceptions to the committee's ultimate finding and judgment, we make no ruling in reference to the demurrer. This conclusion will be without prejudice, however, and the case will stand without any adjudication on demurrer as to the legal sufficiency of any count or specification of the accusation.

This brings us to a consideration of the exceptions to the committee's findings under specifications 1 and 2. Since these counts are in substance the same, one alleging a violation of a rule of the police department and the other a violation of an ordinance which in language was identical with the rule, and since the convictions on these two charges will, therefore, stand or fall together, we will not hereafter distinguish between the two regulations, but will deal with the case as though it involved a conviction of violating the rule only, what is said both in this opinion and in the headnotes having reference to the ordinance as well as to the rule.

The petition for certiorari assigned, among other things, (1) that the committee erred in charging respondent as set forth in specifications 1 and 2, and in convicting him of the offenses therein alleged, "because same did not constitute any offense, for that said rule was impossible to be complied with in form or letter;" (2) that the committee erred in so convicting him, because "a com-

pliance with said rule, as shown by said rule, was entirely discretionary with the chief," and it "was not alleged or proved, nor was proof offered, that the chief of police had not exercised the discretion requiring [him] to comply with said rule, and he could not be convicted of a violation thereof without such proof;" and (3) that the conviction under those two specifications was illegal "because there was no evidence to show, or tending to show, that he was guilty of a violation of said rule."

In our view of the case, it is unnecessary to decide whether all of these exceptions were well taken. To repeat the rule which the respondent was accused of violating, it provides: "He [the chief of police] will, as often as possible, pay frequent visits at unusual hours to various portions of the city, that he may be able to know, of his own knowledge, that the officers and men are performing their duties." The "officers and men," of course, are other members of the police department. What is meant by "as often as possible"? What are "frequent visits"? And when is an hour "unusual"? By what standards shall these questions be determined, and who is to determine them? Honest and intelligent men would, no doubt, differ very materially in undertaking to answer them.

It is well settled that a law which is to be complied with under penalty must "so definitely and certainly define the offense that a person of reasonable understanding can know at the time of the commission of the act that the law is being violated." "A penal law which is of doubtful construction and in which the act denominated as a crime is described in terms so general and indefinite as to make the question of criminality dependent upon the idiosyncrasies of the men who may happen to constitute the court and jury, and is of such nature that honest and intelligent men are unable to ascertain what particular act it seeks to condemn, is incapable of enforcement, and will be held to be null and void." *Hayes* v. *State*, 11 *Ga. App.* 371 (2) (75 S. E. 523). We are satisfied that any effort to make a strict and literal application of the regulation here under consideration could result in no other logical conclusion than that it is too uncertain and indefinite in its terms to be capable of enforcement. See *Hale* v. *State*, 21 *Ga. App.* 658 (94 S. E. 823) ; *Hamilton* v. *State*, 21 *Ga. App.* 660 (94

S. E. 824) ; 2 McQuillin on Municipal Corporations, 1414, 1426; 19 R. C. L. 1810, and cases cited.

The rule is not for the general public or a class, however, but applies only to the incumbent of a particular office, and possibly should be upheld as a legislative guide, in the nature of a declaration of policy, to be observed by the officer, not at his own arbitrary will, to be sure, but in the exercise of a wise discretion, with due regard to *all* the duties devolving upon him. It is only in this view that the regulation can be regarded as valid; and, under the facts of the present record, we may (and do) assume, without deciding, that it is valid even under this construction. To treat the rule, then, as one to be observed in good faith and in the exercise of a proper discretion, the officer could not be convicted of a violation of it, in the absence of proof that he refused to be guided by it or to exercise any discretion under it, or that such discretion as he may have exercised was affected with negligence, incompetence, or bad faith, and was thus abused. Compare State ex rel. Coleman *v.* Trinkle, 70 Kan. 396 (78 Pac. 854). There is no evidence in the record, circumstantial or otherwise, showing, or tending to show, either that the respondent failed or refused to exercise the required discretion, or that he in any way abused it.

The scope of the evidence as to time was, by a ruling of the committee, restricted to a period of two years next preceding the trial. It appears that Atlanta is a large city, occupying several square miles and having some three hundred and fifty officers on its police force. Each of about twenty of these officers testified that he either had not seen the respondent at all on his beat during the period mentioned, or had seen him but once or twice, or very infrequently. With one or two possible exceptions, those who so testified had beats ranging in size respectively from the space of several blocks to very much larger areas. None of them, of course, were able to testify that the chief had not made tours of inspection and overlooked them when they had not noticed him. He was not required to make his presence known to the other men on these occasions. All the evidence for the prosecution was negative and of the weakest possible character of that class of evidence. Some twenty-five members of the police department, called as witnesses for the respondent, testified to having seen him at various times on their respective beats. The respondent himself testified

at length, but in effect, that he had complied with the rule so far as he possibly could in view of the other duties requiring his attention. The other evidence, considered in parts or all together, failed to contradict this statement; that is, there was no evidence showing that the respondent did not visit the "various portions" of the city for the purposes of the rule as often as it was possible for him to do, under the attendant circumstances with respect to his other official obligations. See *Neill* v. *Hill,* 32 *Ga. App.* 381 (2) (123 S. E. 30). Even if the evidence shows that the respondent failed to make the visits as often as it was physically possible to do, it certainly establishes no more, and, as we have said, his conviction could not stand upon this fact alone, especially when, as appears, there were various other duties attached to the office which were to be regarded and weighed as to their importance, in determining what was "possible" under the regulation in question. The proper discharge of all the duties of chief of police of a large city like Atlanta would require some reason and judgment, in the due application of which it would not be necessary for the officer to visit the various portions of the city as often as physically possible, without regard to his other duties, where there is no mandatory and specific regulation so prescribing. As we have endeavored to show, the particular rule here involved is not one of that character. We conclude that the respondent's conviction of the charges contained in counts 1 and 2 was without any evidence whatever to support it. When the superior court set aside the committee's finding under count 4, there was nothing (whether there was anything before or not) for the conviction to stand on, and the certiorari ought at the same time to have been sustained as to the conviction of the other charges.

Although in a case like the present this court could not weigh the evidence, it has the power and the duty, under proper exceptions, to order a conviction set aside, where it is absolutely without evidence to support it. *Tibbs* v. *Atlanta,* 125 *Ga.* 18 (6) (53 S. E. 811) ; *City of Macon* v. *Anderson,* 155 *Ga.* 607 (117 S. E. 753) ; *Beavers* v. *Armistead,* 156 *Ga.* 833 (supra). And this is true notwithstanding certain provisions of the city charter to the effect that the board of police commissioners (now the police committee) shall establish rules and regulations for the police department on the civil service plan, and that all the officers and employees there-

of shall serve under civil service rules, during good behavior and efficient service, to be finally and exclusively judged of by the board, and that the action of the board in suspending or removing any member of the department for failure to perform his duties shall be final. It appears that the police committee were proceeding under an ordinance which provided as follows: "Neither the chief, assistant chief, captains, or sergeants, shall be removed from office or reduced to ranks, or suspended for a longer time than until the next regular or called meeting of the board without a fair trial by the board of police commissioners after·charges have been preferred and the officer has been given an opportunity to be heard, and then only by a majority of the board and not simply a majority of the quorum present." Even "where a municipal council had the right to remove a policeman with ·or without a trial, but proceeded under the latter method, their judgment of removal could be reviewed on certiorari." *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499, 509 (113 S. E. 545), citing *Asbell* v. *Brunswick,* 80 *Ga.* 503 (5 S. E. 500).

Being of the opinion that the charges were not sustained by the evidence, we omit to adjudicate a further contention of the plaintiff in error that rule 22 has been repealed or superseded by the adoption of later rules and regulations creating the office of assistant chief of police and the offices of captains and sergeants with duties similar to those referred to in the rule in question.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*