## DYSON *v.* WASHINGTON TELEPHONE COMPANY.

1. A demurrer to an action of trover brought against a telephone company to recover "certain telephone sets, open wires, cross-arms, brackets, anchors, transportation brackets, poles, telephone equipment, supplies, tools and instruments, switch-boards, and other property," some of which were attached to the plant of such company and used in the operation thereof by the company in discharging its public duties, the latter articles being useful and necessary in its operation, should not have been sustained on the ground that the action was brought to recover real property.

(*a*) It is unnecessary to determine, in passing upon such demurrer, whether any of such articles constituted realty.

2. For the same reason the defendant failed to sustain by proof its plea that all of the property sued for was either connected with or attached to its plant, or was in its office or on its premises, and was actually used or necessary for use in operating its plant, and that to permit the plaintiff to recover would disrupt the operation of its plant and prevent the company from discharging its duties to the public; for which reason defendant prayed that the petition be dismissed.

(*a*) Conceding, but not deciding, that the plaintiff cannot recover from the telephone company the property so attached and so used under the facts of this case, such plea did not set up a good defense to the whole of plaintiff's action; and the action for this reason should not have been dismissed.

3. If either the demurrer or plea had been a good defense to the whole of plaintiff's action, then such action should have been dismissed, which would have carried a dismissal of defendant's plea and answer as

amended; but as neither presented a defense in toto to the action, the petition should not have been dismissed on demurrer or upon such plea.

(a) When the defendant filed an equitable amendment to its answer, asserting equitable rights and seeking equitable relief, such amendment ipso facto converted plaintiff's common-law action of trover into a proceeding in equity, in which all of the rights of the parties, legal and equitable, touching the subject-matter of this controversy, could be asserted.

4. The court did not err in refusing to recommit the report of the auditor for the purpose of having him pass upon the question of plaintiff's right to hire of the property sued for, the plaintiff not having introduced any evidence on this matter before the auditor and not having invoked any ruling by him thereon.

5. The trial judge did not err in overruling the exception of the plaintiff to the auditor's refusal to strike the defendant's answer, and to rule out all evidence introduced in proof of its allegations, on the ground that a claim for damages arising from a breach of contract cannot be allowed in a plea of recoupment in defense to an action of trover.

(a) If the plaintiff's action of trover had run its course to the end, the plaintiff's position would be sound.

(b) Where the plaintiff sought to recover certain additions and extensions made by him to the lines of the defendant's telephone plant while plaintiff operated the same under a lease contract between him and defendant, by which he was to maintain and return the property in as good condition as when he received it, and under which he had the right to construct or acquire lines connected with the plant, which should remain his property if the company did not take them and pay to him in cash the actual value thereof at the expiration of such lease, under its answer in the nature of a cross-action the defendant could recoup against the value of such additions and extensions the damages sustained by it flowing from plaintiff's breach of his covenant to maintain and return the plant in the condition in which he received it.

6. The lease contract between the defendant and the plaintiff provided, that, should the plaintiff construct or acquire lines connected with the telephone plant of the defendant, such new lines should remain the property of plaintiff at the expiration of the lease, but that the defendant should have the right at that time to acquire from plaintiff .all such lines at their actual value. *Held*, that the word "lines," as used in this contract, embraces all lines constructed or acquired by the plaintiff and connected with the plant of the defendant, including both extensions of lines existing at the inception of the lease and new and independent lines so constructed or acquired and connected.

7. Under the change of plaintiff's action into a proceeding in equity by the defendant's answer, it becomes unnecessary to decide whether the plaintiff's extensions and additions to the lines of the telephone company were realty for the recovery of which trover will not lie, and whether trover will lie to recover such extensions and additions when attached to the plant of defendant and operated by it in performing its public duties. The plaintiff's action being converted into one in equity, the true right and equity of the plaintiff is to recover payment for such extensions and additions at their actual value at the expiration of the lease; and the

true right and equity of the defendant is to recoup against this value the damages sustained by it by plaintiff's breach of his covenant to maintain and return the plant in the same condition in which it was when he received it.

8. The trial judge erred in sustaining the defendant's exceptions of law, in sustaining the demurrer to the plaintiff's petition and dismissing the same, and in taxing all the costs against plaintiff.

No. 3866.    DECEMBER 12, 1923.

Trover.   Before Judge Shurley.   Wilkes superior court.   January 5, 1923.

Oliver S. Dyson brought his action of trover against the Washington Telephone Company, to recover "certain telephone sets, open wire, cross-arms, brackets, anchors, transportation brackets, poles, telephone equipment, supplies, tools and instruments, switchboards and other property," fully set out and identified by a detailed list attached as an exhibit to his petition.   The caption of this list and inventory is as follows: "Property of Oliver S. Dyson attached to plant of Washington Telephone Co., and claimed as his property."   Another caption in this inventory is: Exchange supplies on hand.   The value of each item of this property is not given in the inventory, but in his petition the plaintiff alleges that the value of all of it is $5,000, and that the yearly rental value is $1,000.

The defendant demurred to this petition on the grounds: (1) that it sets forth no cause of action; and (2) that the plaintiff fails to separately specify or determine the value of any of the articles which he seeks to recover, it not appearing from the petition or the exhibits thereto what is the value of any one of the items of property sued for.   In its answer the defendant alleges that on Aug. 15, 1914, plaintiff and defendant entered into a written contract whereby the defendant rented to the plaintiff all of its property then owned and used by it in the operation of its telephone plant, the central office of said plant being located in the City of Washington, Ga.; that all of the property sued for by plaintiff and in the possession of defendant is either connected with or attached to its plant or is in the office or on the premises of the defendant and is actually used or is necessary for use in the operation of said plant; that this plant is the only telephone plant in said city, and there are no telephones in said city except those used in connection with said plant; that connected with said plant are

330 telephones located in Washington and in its environments and adjacent territory; that each of said telephones constitutes a unit, said system serving the public being composed of all of such units, and thus enables one to talk from one unit to every other unit in the system, which service as a public-service corporation the defendant is obligated to render to each of its subscribers; that if defendant had complied with the demand of plaintiff to deliver said property or any part thereof, the result would have been to interfere with, disorganize, and disrupt the operation of this telephone system and prevent the defendant from rendering to the public and subscribers the service which as a public duty it is required to render; that the same result would follow from a recovery by plaintiff of said property or any part thereof; and that the defendant had no right to comply with plaintiff's demand for the possession of the property sued for, which demand was made before the filing of this suit, for which reason plaintiff has no right to maintain this action. The defendant prayed that said petition be dismissed.

Subject to its demurrer and the above plea, the defendant further answered as follows: The plaintiff failed and refused to return to defendant its property at the expiration of said lease, but continued in the use and possession of same until Sept. 22, 1919, when the plaintiff turned over to it certain of the property now sued for and took its receipt therefor. Under the terms of said receipt said property was received by the defendant "subject to such disposition as may be agreed upon or as may be provided for under the contract of lease" between plaintiff and defendant. There has been no agreement between plaintiff and defendant as to the disposition of said property, nor can they agree with respect to same; and said property is subject to be disposed of "as may be provided by the contract of lease" between defendant and plaintiff. Defendant is in possession of the property by consent of plaintiff for a special purpose, and can only be dispossessed in the event that under the lease defendant is not entitled to retain the same. For this reason plaintiff has no right of action except to sue for said property under the provisions of said lease, and cannot maintain this suit. The property sued for was attached to said plant of defendant while it was being operated by plaintiff under the contract of lease, a copy of which is attached as Exhibit A to the

answer. The said property constitutes additions to said rented property, the title to which followed the principal thing to which it was attached, and plaintiff has no right to recover same or the value thereof, but by reason of having been so attached to said property of the defendant, they have become its exclusive property.

Under said contract of lease it is provided that "should the plaintiff construct or acquire lines connected with said plant such new lines so constructed and acquired" should be the property of plaintiff. If plaintiff constructed or acquired any lines within the meaning of said paragraph of said contract during the time he was in possession of defendant's property, he did not remain in possession thereof. If the defendant were in possession of any such lines under the terms of said contract of lease, plaintiff would have no right to recover them, but could only recover their value as agreed upon or as determined by arbitration, and in no event could he recover the property itself. Plaintiff failed to return to defendant upon determination of said lease certain articles of property which were turned over as a part of the property leased to him on Aug. 15, 1914, of the value of $1,487.14. A list of said articles is attached as Exhibit C to the answer. Defendant further alleged that plaintiff had damaged it by failing to return the property leased in such condition as to give good service. In an exhibit to the answer is set out an itemized statement of the condition of the parts returned and of the cost of repairs and replacing the same. The property sued for in its possession was used by plaintiff in the operation of said plant at the time said contract of lease expired and prior thereto. Defendant, by reason of these facts, has been damaged $3,646.11, which it is entitled to recover from the plaintiff, and prays to set off and recoup the same against plaintiff's demand. Defendant denied that plaintiff was entitled to recover from it the property sued for or any part thereof or any amount of money.

Under the contract of lease between defendant and plaintiff, a copy of which was attached to the answer, the telephone company leased to plaintiff for a period of five years, beginning Sept. 1, 1914, and ending Aug. 31, 1919, "all its franchise, rights, privileges, poles, cables, wires, switch-board, central office station equipment, and all and every part of its property and of any and every kind now owned and used by it in the operation of its telephone plant."

The plaintiff agreed to pay defendant an annual rental of $1,600 for said property. Plaintiff further agreed to spend in the maintenance of said plant such amount of money as might be necessary to keep said plant in its present condition so that it and its equipment would be in the same physical condition at the end of the lease as at the beginning. This provision was to be construed so as to require the replacing only of such equipment and property as during the lease became so worn as not to give good service or as might be destroyed by storm, lightning or fire. The lease provided further that should the plaintiff "at any time during the period of this lease construct or acquire lines connected with said plant" such new lines should be and remain his property on the expiration of this lease; but the telephone company should have the right at that time to acquire from him all of such lines so constructed or acquired upon payment to him in cash of such sum as would represent the actual value of such lines, but the telephone company should not be required to buy or pay for such lines unless in the opinion of its officers or agents such line or lines were of value to the company. The lease further provided that if the telephone company and plaintiff could not agree on the value of such lines, the value should be determined by three disinterested persons, one selected by each party and a third by the two so selected.

By an amendment to its answer defendant alleged that the action of plaintiff is one in bail trover, whereby it seeks to recover of the defendant certain property which consists of two classes, one of which is composed of articles which are physically attached to and form a part of the telephone plant and which are indispensable to the use thereof in the required service, and the other consists of articles which are detached and not in immediate use. The articles sued for, especially those in the first class, are not subject to recovery in an action of trover, in that delivery to the plaintiff would result in disruption of the services of the plant and interfere with the service it does the public. If plaintiff has any right to recover at law from the defendant by suit he would have such right in an equitable action and to a decree impounding the issues and profits of the plant until after said judgment had been satisfied or by levy upon such portions of the plant as were not necessary to its operation in serving the public. As to the second class of articles plaintiff would have the right to recover in its present action of

bail trover. In its original plea defendant sought to set off and recoup against plaintiff's demands certain counter claims. Some arose in tort and others arose by reason of plaintiff's failure to return to defendant at the determination of the lease certain articles in such condition as to give good service as required by the lease. Plaintiff and defendant have demands against each other which are of such an intricate nature that they cannot well be settled on the law side of the court, there being several hundred items involved, and to properly determine such matters would require a volume of detailed testimony; an accounting through equitable methods should be had and through an auditor; said controversies should be heard in one proceeding under equitable principles and procedure. Defendant prayed that the court determine said entire cause on the equity side of the court, and determine in this proceeding all claims, demands and matters in issue between plaintiff and defendant, and for an equitable accounting between them.

The case was referred to an auditor. On the hearing before him the plaintiff made the following case: On the call of the case and before the introduction of any evidence, the plaintiff elected to take a money verdict. He introduced in evidence the lease contract of Aug. 15, 1914, between defendant and himself, the material provisions of which are set out above. He put in evidence an inventory of the property leased by him from the defendant and turned over to him at the date of the lease. This inventory showed, commencing at the central office, each telephone pole with cable, cross-arms, open wire, cable terminals and other equipment attached to each pole, the condition thereof at the date of said inventory, the equipment in the central office, its kind and condition, a list of all the subscribers to telephone sets, material, supplies, tools and other property not attached to the plant. He likewise put in evidence a similar inventory taken in September, 1919, showing in similar manner and detail each pole with its equipment, the equipment in the central office, subscribers to telephone sets in service, and a list of all material, supplies, tools and other property not attached to the plant. Plaintiff testified that he turned over the plant to the telephone company in 1919, for which he took a receipt. He made a demand on defendant for the specific property set out in the inventory attached as an exhibit to his petition, and the defendant

declined to deliver the same to him. He had been in the telephone business eight years, was familiar with the value of telephone property and material, and the value of the property set out in said exhibit was $5,197.28. In arriving at the value put upon this property, he took the cost of the material as of the date of Sept. 1, 1919, plus labor and expense of installation, less 25 per cent. for depreciation. The switch-board is set on the floor like a desk. Cables and wires run from it to other boards from which wires go out over the poles to the telephones of subscribers. He added 68 new telephones to the plant, and figured their value at $1,448.40, including wire, brackets, freight and other items necessary to install them. During the time he operated the plant he sent off many telephones for repair. He had to put up additional wires along the route of cables which would not accommodate additional telephones. The property he claims consists of equipment added and material on hand on Sept. 1, 1919. The system had a direct long distance connection with the Southern Bell Telephone Company. He spent $2,217 for improvements and extensions in five years; for outside lines, poles, &c., $858.92; for maintenance of the central office equipment, $1,600.28.

The defendant introduced evidence showing that it had made an inventory and appraisement of the missing items when plaintiff turned back this plant and of the net value of additions and removals. The net value of additions to the plant after deducting the value of the missing articles was placed at $2,233.07. There should be some credit for depreciated value of the old cut ins, if the aerial cable was in good condition in September, 1914. Some credit should be allowed for existing troubles and for net additions to the plant. An expert for the defendant testified that he had checked the list of articles sued for by plaintiff and valued by him at $5,197.28, and if such articles were removed and delivered to plaintiff, the total value would be $1,263.25; it would cost about $600 to remove and deliver it, which sum, deducted from its value, would leave a net value of $663.25. The expert's value was practically junk value. Plaintiff undermaintained the plant to the extent of $10,000.

This expert testified that there is no actual attachment of any part of the telephone plant to the soil, in this kind of plant, except the pole; that any part of a telephone plant can be detached from

the soil without damaging the real estate or material. The plaintiff put in evidence a receipt from the telephone company, dated Sept. 22, 1919, for the property turned back by him to the company, to which was attached a copy of the inventory made by the company's expert and a detailed list of the properties delivered to the company and claimed by plaintiff. This receipt recites further as follows: "Also received of said Dyson the property described in an inventory hereto attached and marked Exhibit B, which is claimed by said Dyson to belong to him as property attached by him to the plant of said Washington Telephone Company during the term of said lease for which said property described in said inventory is received by the Washington Telephone Company subject to such disposition as may be agreed upon, or as may be provided for by the contract between said Company and said Dyson, which is delivered under protest by said Dyson that the property described in said Exhibit B is his property and not the property of the Washington Telephone Company." Plaintiff also introduced his written protest to the company against its use of the property claimed by him. The defendant put in evidence a valuation report of Sept. 17, 1919, by its expert, in which the articles in the 1914 inventory, which were missing from the 1919 inventory, were valued at $578.50. Additions to the plant by plaintiff were valued at $2,811.57, leaving a difference in favor of plaintiff of $2,233.07. It was admitted that defendant was a public service corporation, conducting a general telephone business, local and long distance, and held a franchise from the City of Washington, and plaintiff, during his lease, had an assignment of and used this franchise; that there were 260 telephones at beginning of plaintiff's lease and 330 when he returned the property as of Sept. 1, 1919; that the company had its central office in a building on the public square of Washington, the wires extending therefrom through various streets to the dwellings of subscribers in town and along roads to those of country subscribers; that the company was connected with the Wilkes Telephone Company operating a line from Washington to Tignall, the Lincolnton Telephone Company, operating a line to Lincolnton, and the Southern Bell Telephone Company with long distance connections throughout the United States.

Plaintiff abandoned his action to recover all articles designated in the exhibit to his petition as his tools, exchange, supplies on

hand, and similar articles, the same having been disposed of by agreement between him and the defendant.

The auditor made the following findings: 1. Though a telephone plant is real estate, wires, instruments, &c., going into the construction of such a plant, made by contract to that effect, retain their character as personalty. 2. Under the provisions of the lease that, should the lessee "at any time during the term of this lease construct or acquire lines connected with such plant, such new lines so constructed or acquired should be and remain the property" of the lessee at the expiration of the lease, and that the lessor was to have the option at the expiration of the lease of taking over such new lines by paying the actual physical value thereof, but not requiring the lessor to do so unless such lines were constructed or acquired with the consent of the lessor, such additions and acquisitions made without the consent of the lessor, and in the absence of the exercise by the lessor of its option to take them over, retain their character as personal property, for which an action of trover will lie. 3. An action of trover will lie for the recovery of such additions and acquisitions made under the circumstances aforesaid. 4. That the word, "lines," as used in the lease contract, with reference to lines constructed or acquired by the lessee, means all additions and acquisitions to the plant not used for maintaining or replacing parts thereof, but for the purpose of enlarging and extending the original system. 5. While damages arising from a breach of a lease contract cannot generally be allowed in a plea of recoupment in defense to an action of trover, when such contract provides that the lessee of a telephone plant shall maintain and return it in the same physical condition as it was in at the beginning of the lease, such contract contemplates a return of the original plant in its entirety at the expiration of the lease; and where the lease contract provides that the title to all additions and acquisitions shall remain in the lessee at the expiration of the lease, with the option of the lessor to take them over at their actual physical value, and where the lessor does not exercise such option, such lessor in the trover suit by the lessee against it for additions and acquisitions can set up damages sustained by it by failure of the plaintiff to maintain and return the property to the lessee in the same physical condition as when it was leased. 6, 7. These findings relate to the admission of evidence, and it is unnecessary

to set them out. 8. The stipulation in the contract for a determination of the physical value of additions and acquisitions by arbitration does not prevent a suit in the first instance.

The auditor found as matters of fact that the value of the additions and acquisitions made to the plant by plaintiff was $3,715.16; that the damages sustained by the defendant, from failure of plaintiff to properly maintain the plant, were $1,492; and that the value of the missing parts was $320.75, making a total of $1,812.75 due by plaintiff to the defendant. The auditor found that the plaintiff was entitled to recover from defendant $1,903.41. He found that the cost of the case should be borne equally by plaintiff and defendant.

The plaintiff moved to recommit the case to the auditor because he had failed to make any finding as to the right of plaintiff to recover hire for the use of the property sued for. The court declined to recommit the case, and error is assigned on this ruling. The plaintiff excepted to the auditor's fifth finding of law and to his finding that the cost of the case should be borne equally by him and defendant, and to his finding that there should be deducted from the value of the additions and acquisitions to the property the sum of $1,492 in favor of defendant as damages due to plaintiff's failure to properly maintain the plant, and the further sum of $320.75 for missing parts. The defendant excepted to all of the findings of law by the auditor. The judge overruled the plaintiff's exceptions to the report of the auditor, and error is assigned upon this ruling. The judge sustained the defendant's first, second, third (except subsection "d"), fourth, fifth, sixth, and eighth exceptions of law. Plaintiff excepts to this judgment and to the judgment sustaining the demurrer and dismissing the petition.

*Callaway & Howard* and *W. A. Slaton,* for plaintiff.

*Horace & Frank Holden, I. T. Irvin Jr., Colley & Colley,* and *W. R. Jennings,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. Should the demurrer have been sustained on the ground that the property sought to be recovered was realty for which an action of trover would not lie? The suit is for the recovery of "certain telephone sets, open wire, cross-arms, brackets, anchors, transportation brackets, poles, telephone equipment, supplies, tools and instruments, switch-boards, and other property" of the plaintiff. None

of these articles per se are realty. On the contrary they are, standing alone, personalty. But in the petition it is alleged that these articles are fully described in a list and inventory attached to the petition. The caption of this list and inventory is as follows: "Property of Oliver S. Dyson attached to plant of Washington Telephone Co., and claimed as his property." If we construe this language to mean that all of this property is attached to the plant of the telephone company and is used in its operation, then we would have to decide whether, under the facts of this case, it is to be regarded as real estate, for the recovery of which the plaintiff cannot maintain this action. But this inventory shows that the plaintiff is seeking to recover "exchange supplies on hand," which certainly are not attached to the soil and are not realty. If this be so, then the plaintiff, taking the most favorable view for the defendant, is suing to recover some property which has become realty because attached to the plant of the company, and to recover other property which is not so attached, which has not lost its character of personalty and can be recovered in an action of trover. While we cannot look beyond the four corners of a petition to determine whether it is subject to demurrer, we are fortified in our construction of the petition and its exhibit by the allegation of the defendant's answer, that a part of the property which the plaintiff seeks to recover is recoverable in an action of trover. So conceding to the defendant the most which it can claim, the petition was bad so far as it undertook to recover the property attached to the plant of the telephone company, but good so far as it sought to recover the personal property not so attached. A general demurrer goes to the whole pleading to which it is addressed, and should be overruled if any part thereof is good in substance. McLaren v. Steapp, 1 Ga. 376; Hazlehurst v. Savannah &c. R. Co., 43 Ga. 13; Finney v. Cadwallader, 55 Ga. 75; Lowe v. Burke, 79 Ga. 164 (3 S. E. 449); May v. Jones, 88 Ga. 308, 312 (14 S. E. 552, 15 L. R. A. 637, 30 Am. St. R. 154); Napier v. Union Cotton Mills, 93 Ga. 587 (20 S. E. 80). A bad part in pleading does not make the whole bad, but a good part makes the whole good enough to withstand a general demurrer. Munnerlyn v. Augusta Savings Bank, 88 Ga. 333, 339 (14 S. E. 554, 30 Am. St. R. 159). So it becomes unnecessary to determine, in passing upon the demurrer, whether trover lies to recover all of the property embraced in the

petition, and whether under the law and terms of the lease between the defendant and the plaintiff the personalty sued for retained its character as personal property although it may have been attached to, and made a part of, the company's plant. 27 Am. & Eng. Enc. Law (2d ed.), 1024.

2. The defendant specially pleaded that all of the property sued for by the plaintiff is either connected with or attached to its plant, or is in its office or on its premises, and is actually used or is necessary for use in the operation of its plant, and that to permit the plaintiff to recover would disrupt the operation of its plant and prevent the company from discharging its duties to the public, for which reason the plaintiff had no right to maintain this action; and for this reason the defendant prayed that the petition be dismissed. Conceding that the plaintiff cannot recover from the telephone company property attached to its plant and "which is absolutely essential to the complete performance of the public duties required of it," on the ground that "the public is deeply and seriously interested" therein, a question which we will have to deal with later in this opinion, we have seen, in dealing with the demurrer to the petition, that this suit was not brought solely for the recovery of property so situated, but in part to recover property not attached to the plant and not actually used in the operation thereof, although such part of this property could be used in such operation. For this reason the proof to sustain this plea is not sufficient, and does not set up a good defense to the whole, if any, of the plaintiff's action; and the action should not have been dismissed upon proof of such facts under said plea.

3. Subject to its demurrer and the above plea, the defendant filed an amendment to its answer, in which it sought to have an equitable accounting between it and the plaintiff, and to have all matters in dispute between them, growing out of their lease contract, adjudicated and settled, so as to prevent a multiplicity of suits. If either the demurrer or plea had been a good defense to the whole of plaintiff's action, then the plaintiff's action should have been dismissed, and with the dismissal of plaintiff's petition would have gone the defendant's plea and answer as amended; but we have seen that neither presented a defense in toto to the action. For this reason, the petition should not have been dismissed upon demurrer nor upon the proof submitted to sustain said plea. This

being so, when the defendant filed its equitable amendment to its answer, and asserted therein equitable rights and sought equitable remedies and relief, such amendment ipso facto converted the plaintiff's common-law action of trover into a proceeding in equity, in which all the rights of the parties, legal and equitable, touching the subject-matter of this controversy, could be asserted. *Oellrich* v. *Georgia Railroad,* 73 *Ga.* 389; *Dunson* v. *Lewis,* 156 *Ga.* 692 (119 S. E. 846).

4. This brings us to consider the rulings of the trial judge upon the exceptions to the auditor's findings. Did the court err in refusing to recommit the report of the auditor for the purpose of having him pass upon the question of plaintiff's right to hire of the property sued for? In his petition plaintiff alleged that the hire of the property sued for was worth $1,000 per annum; but on the hearing before the auditor he introduced no evidence on this subject. Under such circumstances the plaintiff will be treated as having abandoned his claim for hire; and the failure of the auditor to deal with this matter does not furnish proper cause for recommitting the report. Such omission is not a proper case for such recommittal. Civil Code (1910), § 5139. An auditor's report will not be recommitted for the purpose of having the auditor report on a demand of a plaintiff in support of which he introduced no evidence. If the plaintiff wished to insist on this claim, he should have offered proof to sustain it during the hearing before the auditor, and caused the auditor to rule thereon. He cannot omit to do this, wait until the auditor has made his report, and then move to have the case recommitted for further hearing and report on such claim. He will be held to have abandoned his claim, in the absence of any showing excusing his failure to press it before the auditor during the progress of the case. This makes it unnecessary for us to decide whether the plaintiff would be entitled to recover hire for the property sued for, under the facts of this case.

5. The plaintiff moved to strike the defendant's answer, and to rule out all evidence introduced in proof of its allegations, on the ground that a claim for damages arising from a breach of contract cannot be allowed under a plea of recoupment in defense to an action of trover. The auditor overruled this motion, and to this ruling the plaintiff excepted. The trial judge overruled this

exception, and error is assigned by plaintiff on his ruling. We think the rulings of the auditor and judge are correct. If the plaintiff's action of trover had run its course to the end as an action at law, the plaintiff's position would be sound. Under those circumstances damages, arising from the breach of the lease contract between plaintiff and defendant, could not be allowed under a plea of recoupment in defense of the trover action. *Harden* v. *Lang,* 110 *Ga.* 392 (36 S. E. 100) ; *Bell* v. *Ober & Sons Co.,* 111 *Ga.* 668 (36 S. E. 904) ; *Potts-Thompson Liquor Co.* v. *Capital City Tobacco Co.,* 137 *Ga.* 648 (74 S. E. 279). But the plaintiff's action did not continue an action at law. By the equitable answer of the defendant it was changed into a proceeding in equity. The plaintiff sought to recover certain property consisting of additions and extensions made by him to the lines of the plant of the defendant while he operated the same under the lease contract. Under that contract plaintiff was to maintain and return the property to the defendant in as good condition as when he received it; and under that contract he had the right to construct or acquire lines connected with the plant of the defendant which would remain his property; but the telephone company under the lease contract had the right, at the expiration thereof, to acquire from defendant all such lines upon payment to him in cash of the actual value of such lines. At the expiration of the lease the defendant took possession of the additions and extensions made by plaintiff to its plant, which it could not legally have done except under the provision in the lease authorizing it to acquire them on payment to plaintiff of the actual value thereof. By taking possession of this property with these additions and extensions at the expiration of the lease, the defendant will be deemed and held to have exercised its option to acquire it, and thus became bound to pay plaintiff the actual value thereof at the time of the expiration of the lease. The defendant further set up in its equitable answer that plaintiff had failed to maintain and return its plant in the condition in which it was when he received it, and that the defendant had been thereby damaged. It sought to recoup such damages against any claim which plaintiff might have to these additions and extensions. On the exercise by the defendant of its option to acquire this property, it became liable to plaintiff for the actual value thereof. Against this value the company claimed it could recoup any damages sustained

by it because of the breach of said contract. In its amendment defendant further sought to have all matters of dispute arising between it and plaintiff settled in one suit in order to prevent a multiplicity of suits. It sought affirmative equitable relief. It was bound to give effect to all of the equities of plaintiff. Under these circumstances, we do not see why the defendant could not recoup its damages growing out of plaintiff's breach of said covenant, against the actual value of this property so taken and retained by the defendant upon expiration of the lease. The defendant made a proper case for equitable relief and recoupment. *Beall* v. *Rust,* 68 *Ga.* 774; *Malsby* v. *Young,* 104 *Ga.* 205 (2) (30 S. E. 854). In *Hecht* v. *Snook &c. Co.,* 114 *Ga.* 921 (41 S. E. 74), this court said: "Before any statutes permitting set-offs were enacted in England, the court of chancery, following the equitable principles of the civil law, took jurisdiction in matters of set-off for the purpose of preventing circuity of actions." So we are of the opinion that the auditor did right, under the facts of this case, in refusing to strike the defendant's answer, and to rule out all evidence submitted thereunder; and that the trial judge did right in not sustaining plaintiff's exception to the auditor's ruling in this matter.

6. The contract by which the plaintiff leased from the defendant its telephone plant contains this provision: "Should said party of the second part [plaintiff] at any time during the period of this lease construct or acquire lines connected with said plant, such new lines so constructed and acquired by said party of the second part shall be and remain the property of said party on the expiration of this lease, but said party of the first part [the defendant] shall have the right at that time to acquire from said party of the second part . . all of such lines so constructed or acquired, upon the payment to him in cash such sum as would represent the actual value of such lines." The meaning of the word "lines," in this provision, became a matter of acute dispute between the parties. The auditor found that "lines," as so used, meant all additions and acquisitions to the plant, not used for maintaining or replacing parts thereof, but for the purpose of enlarging and extending the original system. To this finding the defendant excepted on the ground that " 'lines' cannot be construed to mean 'all additions and acquisitions to the original telephone plant,' for the reason that

said contract refers to 'lines connected with said plant,' that is already connected, and therefore could not have meant 'additions and acquisitions' thereafter *connected* with said plant; and for the further reason that the word 'line or lines' in said contract should be construed to mean a telephone plant or plants, such as the Tignall plant or Tignall line, which is the construction placed on said [word by the] legal authorities, and the only reasonable construction to place thereon under the terms of said contract." The court sustained this exception of the defendant to the auditor's finding, and the plaintiff excepts to this ruling. We think the trial judge put the wrong construction upon the meaning of this provision. It does not embrace only independent lines constructed or acquired by plaintiff and connected with the plant. The contract embraced all lines constructed or acquired by plaintiff, whether dependent or independent. The provision embraces extensions of lines already built and new lines constructed or acquired by plaintiff and connected with the exchange of defendant, although not constructed or acquired as an independent system or part of such system. There is nothing in the contract to limit this provision to one class of lines. Such a construction would be unreasonable. There is no good reason why the plaintiff should not be paid for a new line erected by him on a street in Washington to supply telephone services to dwellers thereon and to be used as a part of the system of the company leased by him. Nor is there valid reason for holding that he should not be paid for the extension of the lines of the company into unoccupied territory for the same purpose. It would be inequitable and unjust to allow the telephone company to retain such additions or extensions erected by defendant at big expense, without paying for the same. Such additions and extensions were evidently within the contemplation of the parties at the time the lease contract was entered into. So we think that the auditor found right in this matter, and that the trial judge erred in sustaining the defendant's exception to the auditor's finding.

7. Two questions, which are strongly and ably stressed in the briefs of counsel, one whether extensions and additions to the lines of the telephone company, constructed or acquired by the plaintiff and connected with the company's plant, were realty for the recovery of which trover will not lie, and the other whether trover will lie to recover such extensions and additions when they

are being operated by the defendant as part of its plant in performing its public duties, need not be decided under the view we take of this case. These questions would have arisen, and would have to be decided, if the trover suit had not been changed by the defendant's equitable amendment into a proceeding in equity. By this metamorphosis the action of trover was converted into a suit in equity. By this final turn the action became an equitable one for the full and complete determination of all the rights of the parties under the lease contract. The true right and equity of the plaintiff was to have payment for these extensions and additions at their actual value at the time of the expiration of the lease, and not to recover them or damages for their conversion. The true right and equity of the defendant was to recoup against this value the damages sustained by it by the plaintiff's breach of his covenant to maintain and return the plant in the condition in which he received it. The trover action survived as the peg on which was hung the defendant's equitable answer in the nature of a cross-action. In this view of the case we do not think that it is now necessary to decide these questions. The proper disposition of the case does not depend upon their decision. Such disposition rests upon the determination of the equitable rights of the parties. So it becomes unnecessary to consider, as to these questions, the rulings of the auditor, the exceptions of the defendant to such rulings, and the judgment of the trial judge on these exceptions.

8. The trial judge erred in sustaining the defendant's exceptions of law. He should have held that the decision of the exceptions to the findings dealt with in the last division of this opinion was unnecessary, and that all other rulings to which the defendant excepted were correct. The trial judge likewise erred in sustaining the demurrer to the plaintiff's petition, in dismissing the same, and in taxing all the costs against the plaintiff.

*Judgment reversed. All the Justices concur.*