## WASHINGTON TELEPHONE COMPANY *v.* DYSON.

1. On the trial of exceptions to findings of fact by an auditor, the burden is upon the exceptor to overcome such findings by a preponderance of the evidence.

2. The court properly instructed the jury that the plaintiff was entitled to recover the value of the lines constructed or acquired by him, and connecting with the plant of the telephone company, as they stood on September 1, 1919, and that he was not merely entitled to recover the value of the material of which these lines were built, when dismantled by the company and delivered to him, less the cost of detaching the material from the lines of the system and of its delivery to the plaintiff.

3. The majority of the court are of the opinion that the trial judge did not err in giving to the jury the instructions set out in the fourth, sixth, and eighth grounds of the amendment to the motion for a new trial. HINES, J., dissents.

4. The court properly instructed the jury that under the lease contract the lessee was required to properly maintain the plant of the lessor during the period of his lease, by replacing such property as became so worn as not to give good service, that he was not required by his contract to maintain it further than was sufficient for this purpose, and that the mere fact that a particular part of the property was worn would not require him to replace it, if in fact it was capable of giving such service in the operation of the plant.

5. The court properly instructed the jury that the true right and equity of the plaintiff was to have payment for additions and acquisitions to the plant at their actual value at the time of the expiration of the lease, and not to recover the property itself or damages for its conversion.

6. Under the lease contract, new lines constructed or acquired by the lessee during the period of the lease were to be the property of the lessee at the expiration of the lease, and the lessor had the right at that time to acquire from the lessee all such lines so constructed or acquired, upon the payment to him of such sum as represented the actual physical value of said lines; but the lessor was not required to buy or pay for such lines unless in its opinion they were of value to it. The language, "new lines connecting with said plant," embraces all lines constructed or acquired by the lessee and connected with the plant of the lessor, including extensions of old lines, lateral lines, main lines, and new and independent lines connecting with the plant of the telephone company.

No. 5271. NOVEMBER 23, 1926.

Equitable petition. Before Judge Perryman. Wilkes superior court. December 11, 1925.

*Horace M. Holden* and *B. W. Fortson,* for plaintiff in error.
*W. A. Slaton,* contra.

References, 34 Cyc. p. 864, n. 13.
Telegraphs and Telephones, 37 Cyc. p. 1621, n. 85.
Trial, 38 Cyc. p. 1778, n. 73; p. 1779, n. 75, 76.

Hines, J. This is the second appearance of this case in this court. *Dyson* v. *Washington Telephone Co.*, 157 *Ga.* 67 (121 S. E. 105). The history of the case up to that time appears in the statement preceding the opinion in the reported case.

The auditor found that Dyson had made additions and acquisitions to the plant of the telephone company, amounting to $3,-715.16. He further found that there should be deducted from this amount, for lack of proper maintenance of the plant by Dyson, the sum of $1,492.00, and for parts missing from the 1914 inventory $320.75, making a total of $1,812.75, and leaving a balance of $1,903.41, for which amount judgment was rendered in favor of Dyson against the telephone company by the auditor. To the first of said findings of fact the telephone company excepted upon the ground that the amount found in favor of the plaintiff was too large, that the amounts found in its favor in the other two findings of fact were too small, and that the amount found in favor of the plaintiff was in consequence too big. The jury returned a verdict finding against all the exceptions of Dyson to the findings of fact by the auditor. The telephone company moved for a new trial upon the general grounds, and upon certain special grounds added by amendment, which are as follows:

1. Because the court charged the jury as follows: "And the burden is on the defendant in this case, the Washington Telephone Company, to show you by a preponderance of the evidence that the findings of the auditor were wrong, before you would be authorized to return a verdict finding against the report of the auditor." To this charge the telephone company excepted upon the ground that it placed upon it a greater burden than should have been placed upon it.

2. Because the court charged the jury as follows: "I charge you that the meaning of this language is that the Washington Telephone Company shall pay to Mr. O. S. Dyson such sum of money as would represent the fair value of the lines constructed or acquired by Mr. Dyson during the term of this lease, and which were taken over by the Washington Telephone Company just as they stood on September 1, 1919." The telephone company excepts to this charge, upon the ground that the plaintiff was not entitled to recover the fair value of the lines referred to just as they stood on September 1, 1919, because they were then a part of its tele-

phone system, and that plaintiff was only entitled to recover the value of said lines less the expense of detaching and removing them from the telephone system.

3. Because the court charged the jury as follows: "It would not be the value of the second-hand material taken down by the telephone company and delivered to Mr. Dyson, but of the lines just as they were received by the telephone company." The telephone company excepts to this charge upon the ground, that, if the plaintiff was entitled to recover the value of the lines or other property referred to in said charge, it would be entitled to recover their value as second-hand material taken down by the telephone company and delivered to Mr. Dyson.

4. Because the court charged the jury as follows: "If you believe that the auditor applied this rule of valuation in reaching his valuation of the lines delivered by Mr. Dyson to the telephone company, then your finding on that question should be in favor of the auditor's report and against the exception of the defendant as to that matter." The exception to this charge is that it is erroneous, because the auditor might have applied the rule of valuation referred to in this instruction, and may have reached a wrong amount of valuation; and because the mere fact that the auditor applied the proper rule of valuation does not mean that the auditor reached the right results.

5. Because the court charged the jury as follows: "I charge you that the meaning of this language is that while Mr. Dyson, the lessee, was required to properly maintain the plant of the Washington Telephone Company during the period of his lease by replacing such property as became so worn as not to give 'good service,' he was not required by his contract to maintain it further than was sufficient to give good service; and the mere fact that a particular part of the property was worn would not require him to replace it, if in fact it was capable of giving and did give good service in the operation of the plant." The telephone company excepts to this charge upon the grounds: (a) because it did not properly construe those portions of the contract referred to in said charge; (b) because the plaintiff agreed to spend, in the maintenance of the telephone plant and its equipment, such sum in each year as might be necessary to keep the plant and equipment in the same physical condition that it was in when said con-

tract was made, so that at the end of the lease said plant and its equipment would be in the same physical condition that it was in when said contract was made; (c) because the court instructed the jury that the contract required plaintiff to spend, in maintaining the plant during the lease, only such an amount as was necessary to replace such property as became so worn as not to give good service; (d) and because the lease contract provided that the plaintiff was to spend, in the maintenance of the plant, such sum in each year as might be necessary to keep said plant in the physical condition it was in at the beginning of said lease, so that it would be in the same physical condition at the end of the lease.

6. Because the court erred in charging the jury as follows: "If you believe that the auditor in reaching his conclusions applied the rule I have just stated, it would be your duty to find in favor of the auditor's report and against the exceptions of the defendant to the auditor's report." The telephone company excepted to this charge, on the grounds: (a) that the fact that the auditor may have applied the proper rule in reaching his conclusions with respect to the matters referred to in said charge does not mean that the auditor reached the right conclusions; (b) that the question to be decided by the jury was not whether the auditor applied the proper rule in reaching his conclusions; and (c) that it was not the duty of the jury to sustain the findings of the auditor merely because they believed he applied the proper rule or rules of law in reaching his conclusions.

7. Because the court erred in charging the jury as follows: "I charge you further in this case, the true right and equity of the plaintiff (and when I refer to the plaintiff in this case I am referring to Mr. O. S. Dyson in this case)—the true right and equity of the plaintiff is to have payment for the additions and extensions to this telephone plant at their actual value at the time of the expiration of the lease, and not to recover the property itself or damages for the conversion of the property." The telephone company excepted to this charge, on the ground that the suit brought by the plaintiff was an action of trover, and his recovery, if he was entitled to recover, should have been for the property itself, or damages for its conversion.

8. The court charged the jury as follows: "I charge you fur-

ther in this case, the true right and equity of the plaintiff (and when I refer to the plaintiff in this case I am referring to Mr. O. S. Dyson in this case)—the true right and equity of the plaintiff is to have payment for the additions and extensions to this telephone plant at their actual value at the time of the expiration of the lease, and not to recover the property itself or damages for the conversion of the property. On the other hand, the true right and equity of the defendant, Washington Telephone Company, is to recoup against this value the damages sustained by it as the result of any breach by the plaintiff of his covenant to maintain and return the plant in the condition in which he received it. If you believe that the auditor applied these rules in arriving at his conclusions, your findings should be in favor of his report; while if he did not apply these rules, your finding should be in favor the exceptions to his report." The telephone company excepted to the last sentence of the quoted instruction, upon the grounds: (a) that the court told the jury that their finding should be in favor of the auditor's report, if the auditor applied the rules referred to in said charge in reaching his conclusion, when the auditor may have applied said rule in reaching his conclusion but may have reached a wrong conclusion; (b) that the fact that the auditor may have applied the proper rule or rules in reaching his conclusion does not mean that he reached the right result; (c) that the question to be decided by the jury was not whether or not the auditor applied the proper rule or rules in reaching his conclusion and making his report; and (d) that it was not the duty of the jury to sustain the findings of the auditor excepted to, even though they believed the auditor applied the proper rule or rules in reaching his conclusion.

1. The court did not err in giving to the jury the instruction of which the telephone company complains in the first ground of the amendment to its motion for new trial. In effect the judge told the jury that, upon the trial of exceptions to findings of fact by an auditor, the burden was upon the exceptor to overcome such findings by a preponderance of the evidence. This instruction was sound. *Adair* v. *St. Amand*, 136 *Ga.* 1 (70 S. E. 578); *Livingston* v. *Wynne*, 147 *Ga.* 307 (93 S. E. 877); *McDonald* v. *Dabney*, 161 *Ga.* 711 (132 S. E. 547). If an auditor's finding upon facts did not have this much force and effect, it would be an idle gesture to refer a case to him.

2.    The company complains of the instructions embraced in the second and third grounds of the amendment to its motion for new trial, upon the ground that the plaintiff was not entitled to recover the value of the lines constructed or acquired by him, as they stood on September 1, 1919; but was only entitled to recover the value of the material of which they were built when dismantled by the company and delivered to him, less the cost of detaching it from lines of the system and of delivery of the same to the plaintiff. In other words, the company contends that all that the plaintiff would be entitled to recover would be the value of those lines as junk, less the cost of their conversion into that condition and the delivery of the junked material to the plaintiff. Under the lease contract, new lines which the plaintiff might construct or acquire and connect with the plant of the company were to remain at the end of the lease the property of the lessee, but the lessor should have the right at the end of the lease to acquire from the lessee "all of said lines so constructed or acquired upon payment to him in cash such sum as would represent the actual physical value of said lines." Under this provision of the lease any line constructed or acquired by the lessee and connecting with the plant of the lessor would remain and belong to the lessee. It would belong to the lessee at the end of the lease of these lines, and not the material of which they were built when dismantled and reduced to a state of junk. What the lessor had the right to acquire was these lines and not the material of the dismantled lines. If the lessor should choose to exercise its option to acquire this property, it could only do so upon the payment to the lessee in cash of such sum as would represent the actual physical value of said lines, and not the actual physical value of the material which went into their construction after they were dismantled, less the cost of dismantling and delivery of the material to the lessee. The lessor would not have to pay anything more than the actual value of the physical property of these lines at the end of the lease. In other words, the lessor would not have to pay for any value of these lines due to extraneous circumstances, such as value due to the fact that they were component parts of a going system, and the like. In other words, the lessor would only have to pay the reproduction value of these lines at the expiration of the lease, less depreciation. This would be the actual physical value of such

lines. This seems to be the clear and proper construction of this provision of the lease; and the instruction of the court complained of in the second and third grounds of the amendment to the defendant's motion for new trial are in accordance with this construction, and are not erroneous for any reason assigned.

3. Movant complains of the instructions to the jury which are set out in the fourth, sixth, and eighth grounds of the amendment to its motion for new trial. The ground of exception to these instructions is that the court told the jury that their finding should be in favor of the auditor's report, if the auditor applied the rules defining the rights and equities of the parties, laid down by the court in the instruction embraced in the eighth ground of the amendment to the motion for new trial. By these rules the right and equity of the plaintiff was to have payment for the additions and extensions made to the lines of the telephone plant, at their actual value, at the time of the expiration of the lease, and not to recover the property itself or damages for its conversion. By these rules the court defined the right and equity of the telephone company to be to recoup against such value the damages sustained by it as the result of any breach by the lessee of his covenant to maintain and return the plant in the condition in which he received it. In the charges complained of, the court instructed the jury that if the auditor applied these rules in ascertaining the rights and equities of the parties, they should find in favor of his report. Immediately following the instruction complained of in the eighth ground of the amendment to the motion for new trial, the court instructed the jury as follows: "Now, gentlemen, you have the evidence before you, and the court has no right to express any opinion as to what has or has not been proven in this case. That is entirely in your province; and the court can not invade it, and has no disposition to invade it. You have the evidence before you; . . you take that evidence, consider it, and try to find out what is the truth of this transaction." The court further charged the jury as follows: "If you believe that the conclusions reached by the auditor in this case are not correct, then you would be authorized to find in favor of the exceptions— the exceptions of fact . . filed by the defendant. If, on the other hand, you believe that the auditor's report is right, then you would find against the exceptions." In the opinion of the majority,

the court did not err in giving to the jury the instruction complained of, when taken in connection with the above instructions and the whole charge. From this opinion of the majority the writer dissents.

4. Movant complains of the instructions set out in ground 5 of the amendment to its motion for new trial. The court instructed the jury that the lessee was required to properly maintain the plant of the lessor during the period of his lease, by replacing such property as became so worn as not to give good service, that he was not required by his contract to maintain it further than was sufficient for this purpose, and that the mere fact that a particular part of the property was worn would not require him to replace it, if in fact it was capable of giving such service in the operation of the plant. Movant contends that the lease contract required the lessee to spend, in the maintenance of the plant, such sum in each year as might be necessary to keep it in the physical condition in which it was at the beginning of the lease. Under the lease contract the lessee agreed "to spend, in the maintenance of said plant and its equipment, such sum in each and every year as may be necessary to keep said plant and all of its equipment in its present physical condition, so that at the end of the period of lease . . said plant and its equipment will be in the same physical condition it now is. This provision of this lease shall be construed to require the replacement of only such apparatus, equipment, or property as during the term of this lease becomes so worn or decayed as not to give good service, as such property as may be destroyed or damaged by storm, lightning or fire." The exception to these instructions might be well taken if we were dealing alone with the first provision in the covenant of the lease; but we must construe the covenant as a whole. The second provision in this covenant undertakes to define the meaning of the first provision. The second provision expressly declares that the first provision shall be construed to require the replacement of only such apparatus, equipment, or property as during the term of the lease becomes so worn or decayed as not to give good service. Clearly, under the covenant as a whole, the lessee complied with its terms if he spent each year such sum as might be necessary only to replace such equipment as had become so worn or decayed as not to give good serv-

ice.  If he expended a sum sufficient to replace such worn or decayed apparatus, equipment, or property as had become unfit to enable the plant to render good service, then he complied with the terms of his covenant.  The above instructions of the court are in harmony with this construction of the covenant, and for this reason they were not erroneous.

5.  The court instructed the jury that the true right and equity of the plaintiff was to have payment for the additions and acquisitions to the plant, at their actual value, at the time of the expiration of the lease, and not to recover the property itself or damages for its conversion.  The telephone company excepted to this charge, on the ground that the suit brought by the plaintiff was an action of trover, and, if he was entitled to recover at all, his recovery should have been for the property itself, or for damages for its conversion.  This contention would have been well founded if the trover action had run its course to the end; but there was a transformation of the trover action into an equitable proceeding for an accounting between the parties, and for the full adjustment of their rights and equities.  Thus the trover feature of the litigation was abandoned.  An equitable proceeding took the place of the plaintiff's action at law.  This is often permissible under our system of pleading.  The case was tried as a proceeding in equity for the adjustment of all the rights of the respective parties.  When the case was here before, this court held that the equitable amendment filed by the movant to its answer, in which movant asserted equitable rights and sought equitable relief, ipso facto converted the plaintiff's common-law action of trover into a proceeding in equity, in which all of the rights of the parties, legal and equitable, touching the subject-matter of the controversy, could be asserted. *Dyson* v. *Washington Telephone Co.,* 157 *Ga.* 67 (3 *a*) (supra). By this transformation of procedure the trover action ipso facto ended, and the rights of the parties, whether legal or equitable, were to be determined under the equitable proceeding.  Whatever the plaintiff was entitled to recover would be under the latter proceeding, and not under the former action of trover.  It follows, therefore, that he would not be entitled to recover the property sued for in his action of trover, or damages for its conversion, for the reason already stated, and for the further reason that under the equitable amendment to the original answer in the trover suit

both parties treated the property sued for in the trover suit as the property of the defendant, and the respective rights and equities of the parties were based upon the assumption that the property sued for in the trover action should be treated as the property of the defendant therein. In view of this situation, the instructions of the court to the jury complained of were not erroneous.

6. The lease contract contains this provision: "Should said party of the second part at any time during the period of this lease construct or acquire new lines connecting with said plant, such new lines so constructed and acquired by said party of the second part shall be and remain the property of said party on the expiration of this lease, but said party of the first part shall have the right at that time to acquire from said party of the second part, his heirs or assigns, all of such lines so constructed or acquired, upon payment to him or them in cash such sum as shall represent the actual physical value of such lines; but said party of the first part shall not be required to buy or pay for such lines, unless, in the opinion of the officers and agents of the said party of the first part, such line or lines are of value to said party of the first part." When this case was here before, this court construed the meaning of this provision, and held that the word "lines," as used therein, embraces all lines constructed or acquired by the lessee and connecting with the plant of the lessor, including both extensions of lines existing at the inception of the lease, and new and independent lines so constructed or acquired and connected. It is earnestly insisted by counsel for the telephone company that this construction of this provision of the lease by this court is incorrect, and we are requested to reverse the same. The ruling of this court, thus construing this provision of the lease contract, became the law of this case; and whether right or wrong, it is now the law of the case, is binding upon the parties, and can not now be reversed by this court. *Gray* v. *Conyers,* 70 *Ga.* 349; *Saulsbury* v. *Iverson,* 73 *Ga.* 733; *Mayor &c.* v. *Simmons,* 99 *Ga.* 400 (27 S. E. 710) ; *Ingram* v. *Mercer University,* 102 *Ga.* 226 (29 S. E. 273) ; *Georgia Ry. &c. Co.* v. *Decatur,* 153 *Ga.* 329 (2) (111 S. E. 911). It would seem that any errors of law committed by this court (and we regret that we can not lay claim to infallibility) should be corrected at any stage of the proceeding when this court has jurisdiction of the case. The first business of this court is

to ascertain the true law and declare it. If it should slip up and commit error, it is its duty to correct such error at the proper time and by the proper method. The highest and holiest function of this court is to declare what is the true law or true equity in any case, when properly before this court for decision. Chief Justice Bleckley well declared that "The maxim for a Supreme Court, supreme in the majesty of duty as well as in the majesty of power, is not Stare decisis, but Fiat justitia ruat cœlum." *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 696 (13 S. E. 810). In view of this principle, we sometimes review and reverse our previous decision. But judicial idealism must yield to practical necessity; and in view of this fact, the principle is now settled by this court that when the law of a case is once declared by this court it becomes the law of the case, whether right or wrong, and will not be reviewed and reversed in that case.

But, after a full reconsideration of the construction of this provision of this contract, we think the construction placed thereon by this court is correct. Lines, to come within the meaning of the provision of the lease, must be new lines, in contradistinction to old lines, and must connect with the plant of the telephone company. If the lessee constructed a line upon a street on which there was no line, and connected such line with an old line, such line would come within the purview of this provision. It was both new and was connected with the plant of the company. If there was an old line on a street and the lessee built a new line upon a portion of such street where there was no line, and connected it with the old line, such new line or extension would come within the terms of this provision of the lease contract. If, to furnish service to a patron on a street upon which a main line had been constructed by the company before the lease, and which was in existence at the time of and after the lease, the lessee should build a line leading from such main line into the residence or office of the patron, such new line would fall within the meaning of this provision. In other words, all new lines built or acquired by the lessee, whether independent or dependent, and connected by the lessee to the plant of the company, would come within this provision. It embraces independent lines, extension lines, and branch lines, constructed or acquired by the lessee, and connected with the plant of the telephone company. The plant of the telephone

company embraced, among other things, its cables, main lines, and lateral lines; and whenever the lessee built a new extension to an old line, or a new lateral line, or a new trunk line, and connected the same with the plant of the company, such new line remained the property of the lessee under this provision of the contract, subject to the right of the company to take the same and pay for it as provided in this provision. We see no reason why the company, if it elected to take such extension, lateral lines, or other lines built or acquired by the lessee at a large outlay of money, and which went to increase the value of its plant, should not be required to pay for the same. So, after again considering the proper construction of this provision of the lease contract, we are of the opinion that the construction put upon it by this court when the case was here before is the proper construction of this provision, and should be adhered to.

*Judgment affirmed. All the Justices concur, except*

HINES, J., dissenting. I feel constrained to dissent from the opinion of the majority, set out in the third division of the opinion and in the corresponding headnote. I think that the instructions set out in the fourth, sixth, and eighth grounds of the amendment to the motion for new trial are erroneous. In the charge preceding these instructions, the court defined the rules by which the rights and equities of the parties should be ascertained. By these rules, the right and equity of the plaintiff was to have payment for the additions and extensions made to the lines of the telephone plant, at their actual physical value, at the time of the expiration of the lease, and not to recover the property itself or damages for its conversion. By these rules the court defined the right and equity of the telephone company to be to recoup against such value the damages sustained by it as the result of any breach by the lessee of his covenant to maintain and return the plant in the condition in which he received it. In the charges complained of, the court instructed the jury that if the auditor applied these rules in ascertaining the rights and equities of the parties, they should find in favor of his report. In my opinion, these instructions of the court were erroneous, and in fact took away from the jury the right to determine whether the values found by the auditor were correct or incorrect. In applying these rules for the purpose of ascertaining the rights and equities of the lessee, the auditor had to

find the value of the new lines constructed or acquired by the lessee during the life of the lease and connecting with the plant of the lessor, such value being the actual physical value of such lines at the expiration of the lease. The auditor found this value to be $3,715.16. The auditor had likewise to ascertain the damages sustained by the lessor by reason of the failure of the lessee to keep the plant in the condition in which he received it, and to return the same to the lessor in such condition at the expiration of the lease. The auditor fixed the amount of these damages at $1,-812.75, and, deducting this amount from the value of the lines, he rendered a judgment in favor of the lessee against the lessor for $1,903.41. The lessor excepted to the above valuation of these lines, upon the ground that it was excessive; and the lessor likewise excepted to the amount of damages awarded it by the auditor, on the ground that the amount awarded by the auditor was too small. In passing upon these exceptions it became the duty of the jury to say whether this valuation, under the evidence before them, was excessive, and to decide whether the award of damages to the lessor and against the lessee was too small, thus rendering the judgment in favor of the lessee and against the lessor excessive. The instruction of the court complained of relieved the jury of this duty, by telling them that if the auditor applied the rules for ascertaining the rights and equities of the parties, they should find in favor of his report. The auditor might have applied the above rules in determining the rights of the parties, and yet not have found the correct value of these lines, or the proper amount of damages sustained by the lessor by reason of the breach of his covenant by the lessee to maintain the property in the condition in which he received it and to return it in like condition at the expiration of his lease. The instructions complained of were especially erroneous in view of the fact that the value of these lines was a matter largely of opinion. So also the amount of damages to which the lessor was entitled is based largely upon matter of opinion. The auditor might have applied, and in this case did apply, the rules laid down by the court for determining the rights and equities of the respective parties; and yet he might have reached, in the opinion of the jury, a wrong conclusion as to the value of these lines and the amount of damages sustained by the lessor growing out of the breach by the lessee of his covenant to

properly maintain the leased property. It won't do to say that the proper application of these rules would necessarily result in a true valuation of these lines, and in the proper amount of damages to which the lessor would be entitled. Questions of value are matters of opinion. When the exceptions to the auditor's findings of fact went to the jury, the opinion of the jury should take the place of the opinion of the auditor in fixing the value of these lines, and in the application of the same rules by which the auditor was guided the jury might reach, in their opinion, a different result or conclusion as to the value of these lines and the amount of damages to which the lessor would be entitled. In passing upon the findings of fact these instructions of the court left to the jury the determination of the single fact whether or not the auditor followed the rules laid down by the court for ascertaining the rights of the parties, and instructed them if they should find that he did follow these rules they should find in favor of this report. The jury could find that the auditor followed these rules in ascertaining the rights of the parties, and the jury could likewise apply these rules, and yet reach a different conclusion from that of the auditor as to the values involved in this case. In my opinion these instructions excluded from the jury the right to pass upon the exceptions of fact to the auditor's findings, and they were extremely harmful to movant. For this reason I dissent.